**Phillip Anthony POSEY, Appellant,**

v.

**The STATE of Texas.**

**No. 427–96.**

Court of Criminal Appeals of Texas, En Banc.

March 25, 1998.

Velda R. Faulkner, Houston, for appellant.

Sandra J. Pomerantz, Asst. Dist. Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

*OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW*

McCORMICK, Presiding Judge, delivered the opinion of the Court joined by MANSFIELD, KELLER, PRICE and HOLLAND, Judges.

A jury convicted appellant of unauthorized use of a motor vehicle. See V.T.C.A., Penal Code, Section 31.07. After finding the indictment's two enhancement paragraphs "true," the trial court sentenced appellant to thirty-five (35) years' confinement.

The State's evidence shows Wanda Thomas owned a black 1988 Jaguar that usually was driven by her friend, "Chuck" Williams. On November 4, 1993, Williams parked the Jaguar at Hobby Airport in Houston from where Williams caught a flight to Corpus Christi. When Williams left the Jaguar at the airport, the car was locked, undamaged and in good condition with its alarm system activated. A spare key to the Jaguar was in the console.

On November 7, 1993, Deputy Ervin saw appellant driving the Jaguar. Ervin stopped appellant because the registration sticker on the Jaguar was expired. A key was in the Jaguar's ignition. Appellant could not produce a driver's license or proof of insurance. After Ervin checked the Jaguar's registration and found out it belonged to Thomas, appellant told Ervin that someone he had just met named "Chuck," whose last name and address appellant did not know, gave appellant permission to drive the Jaguar. Inside the glove compartment of the Jaguar were some repair bills with the name "Chuck" written on them. Ervin noticed the inside door panel on the driver's side of the Jaguar was pulled back and the wires to its alarm system were cut. Ervin arrested appellant. Thomas and Williams testified they never gave appellant permission to drive the Jaguar.

Appellant did not testify at trial. However, he presented the testimony of two witnesses—Larry Harris and Kenneth Posey, who was appellant's cousin. These witnesses testified they saw a man named Charles Yates give appellant the keys to the Jaguar

on November 7, 1993.[1] Neither of these witnesses claimed "Chuck" Williams and Charles Yates were the same person. Both of appellant's witnesses were convicted felons. As far as we can tell from the record, Charles Yates was never located, and no one named Charles Yates testified at appellant's trial that he gave appellant permission to drive the Jaguar.

In addition, on cross-examination, Harris testified Charles Yates lived with him for about a week in early November 1993 even though he had met Yates only about a week or two prior to this time. Harris also testified he saw Yates give appellant the keys to the Jaguar about twenty minutes after Harris introduced appellant to Yates. Harris also testified he did not know what Yates did for a living and he did not know where Yates was at the time of trial.

On cross-examination, appellant's other witness, his cousin Posey, testified he did not personally know Charles Yates; he knew "of him." Posey also testified he was in the Jaguar with appellant when Ervin stopped it, and he observed no damage to the Jaguar including anything that could be interpreted as damage consistent with an auto theft which was contrary to what Ervin observed after he stopped the Jaguar. Posey also testified the thought crossed his mind that it was a "bit unusual" for appellant to be driving a Jaguar.

"Q. You didn't think it was the least bit unusual that [appellant] would be driving a 1988 black Jaguar?"

"A. Well, it ran across my mind."

During closing arguments, appellant argued the jury should acquit him because appellant had permission to drive the car from Charles Yates whom appellant thought had rightful possession of the car. The prosecutor argued, among other things, that ap-

pellant's witnesses and the story they told were unworthy of belief.

"We talked about on voir dire when is the last time you loaned your car to somebody you didn't know their last name? When is the last time you borrowed a car from somebody you didn't know their last name?

\* \* \*

"[Appellant] is driving a car, a black '88 Jag from a guy he just met, supposedly, with the door bent back and the alarm cut, from a friend he didn't know the last name of and had only known for a couple of days."

The application paragraph of the jury charge instructed the jury to convict appellant if it found appellant operated the Jaguar *without the effective consent of Thomas.* The jury convicted appellant.

On direct appeal to the Court of Appeals, appellant complained for the first time that the trial court reversibly erred by not *sua sponte* instructing the jury on the defense of mistake of fact. See V.T.C.A., Penal Code, Section 8.02(a).[2] It is undisputed that at trial appellant did not request this instruction and he did not object to the absence of this instruction in the jury charge.

Applying this Court's opinion in *Almanza v. State,* 686 S.W.2d 157, 160–74 (Tex.Cr.App. 1984) (op. on reh'g), the Court of Appeals reversed appellant's conviction and remanded the cause for a new trial upon determining appellant was "egregiously harmed" by the absence of a mistake of fact instruction in the jury charge. See *Posey v. State,* 916 S.W.2d 88 (Tex.App.—Houston [1st Dist.] 1996) (not yet reported). Citing this Court's opinion in Vasquez v. State, 830 S.W.2d 948, 951 (Tex. Cr.App.1992), the Court of Appeals concluded appellant was "egregiously harmed" be-

---

1. For example, appellant's cousin testified:
   "Q. Okay. Now, when you saw Mr. Yates on the 7th of November, 1993, what was he doing? What did you see him do?"
   "A. I saw him—after him and [appellant] conversating, whatever they conversate about, I see him hand back [appellant] the keys and we left."
   "Q. You and who left?"

   "A. Me and [appellant], we left."

2. This Court has held in cases like this that a mistake of fact defense is raised when a defendant presents evidence his use of the car was with the permission of an acquaintance who apparently was authorized to consent to the use of the vehicle. See *McQueen v. State,* 781 S.W.2d 600, 602–03 (Tex.Cr.App.1989).

cause the jury was precluded from considering appellant's only defense.[3]

We granted the State's petition for discretionary review to decide whether *Almanza* applies to the omission in the jury charge of defensive issues that have not been properly preserved by a defendant's request or objection. We hold *Almanza* does not apply in these circumstances.

The State argues *Almanza* applies only to an "error" in the jury charge and it cannot be said a trial court errs in failing to charge the jury on a defensive issue that was never requested or otherwise brought to the trial court's attention. The State claims any other holding would distort "the entire nature of our adversarial system" by interfering with strategic decisions that should be left to the discretion of the defendant and his lawyer. The State also claims any other holding would effectively impose a duty on trial courts to *sua sponte* instruct the jury on defensive issues.[4]

In *Almanza*, this Court set out the "basic framework for analysis" on appeal to preserved and unpreserved "errors" in the jury charge. See *Almanza*, 686 S.W.2d at 171–74. This framework is not a court-made rule; it is based on this Court's interpretation of Article 36.19, V.A.C.C.P., and its statutory predecessors which this Court construed as separately containing the "harm" standards for both "fundamental error and ordinary reversible error" in jury charges. See *Almanza*, 686 S.W.2d at 171. *Almanza* also disapproved of this Court's cases which suggested jury charge error requires an "automatic" reversal. See *Almanza*, 686 S.W.2d at 172–74; but see Reyes v. State, 938 S.W.2d 718 (Tex.Cr.App.1996) (trial court's failure to submit "reasonable doubt" jury instruction requires "automatic" reversal).

■ Neither "harm" standard set out in Article 36.19 as construed by *Almanza* applies unless an appellate court first finds "error" in the jury charge. See *Almanza*, 686 S.W.2d at 174 (finding error in the court's charge to the jury begins—not ends—the inquiry). Neither Article 36.19 nor *Almanza* have any application in determining whether there is "error" in the jury charge. This is because neither "harm" standard to jury charge "error" set out in Article 36.19 as construed by *Almanza* applies unless the record first shows that any requirement of various statutory provisions referenced in Article 36.19 "has been disregarded."[5] This defines the "error" for purposes of *Almanza*. The primary statutory provision referenced in Article 36.19 that could apply or be "disregarded" in cases like this is Article 36.14, V.A.C.C.P.

■ Therefore, the question boils down to whether Article 36.14 imposes a duty on trial

---

3. This merely restates the alleged "error" that occurred in this case. Assuming the applicability of *Almanza*, both "harm" standards set out in *Almanza* require for jury charge "error" that the actual degree of harm "must be assayed in light of the entire jury charge, the state of the evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. An appellate court should consider the quality and weight of the evidence in cases to which the *Almanza* "harm" standards apply to jury charge "error." In *Almanza*, this Court stated:

" 'But in determining whether the error is material ... we are to look to the whole record bearing upon the subject. What was the nature of the testimony supporting the verdict? Was it cogent and overwhelming? What was the character of the testimony presenting the phase or theory of the case omitted to be noticed in the charge, and upon which omission error is assigned? Was it at all reason-

able? Did it present a theory which a reasonable mind could entertain, or was it supported by such testimony as was remotely calculated to destroy the State's case, as well as the charge as a whole? Was the phase of the case simply an addition to the case as made by the State and consistent therewith, or was it in direct conflict with the State's theory? These are all important matters to be considered in passing upon the [degree of harm] in the omission or error....' " (Footnote Omitted). *Almanza*, 686 S.W.2d at 173–74.

4. Appellant's brief does not address the applicability of *Almanza*. Appellant assumes the applicability of *Almanza*, and argues the Court of Appeals did not err to find "egregious harm."

5. In other words, an appellate court will have to find a violation of one of the statutory provisions referenced in Article 36.19 before any of the "harm" standards to jury charge "error" set out in Article 36.19 as construed by *Almanza* even applies.

courts to *sua sponte* instruct the jury on defensive issues,[6] or whether Article 36.14 permits a defendant to complain for the first time on appeal about the omission of unrequested defensive issues in the charge. In other words, pursuant to the "plain" language of Article 36.19, the issue in this case is whether "any requirement" of Article 36.14 "has been disregarded." This presents a question of legislative intent.

Consistent with general rules of procedural default,[7] the "plain" language of Article 36.14 mandates that a defendant must object in writing to claimed "errors" of *commission and omission* in the charge. The "plain" language of Article 36.14 further provides that this "*is all that is necessary to preserve, for review, the exceptions and objections presented to the charge and any amendment or modification thereof.*" (Emphasis Supplied). The "plain" language of Article 36.14 makes clear that a defendant must object to the charge before he may be heard to complain

on appeal about "errors claimed to have been committed in the charge, as well as errors claimed to have been committed by omissions therefrom or in failing to charge upon issues arising from the facts." [8]

Therefore, under this portion of Article 36.14, there generally is no "error" in the charge unless the defendant objects in writing to claimed "errors" of commission and omission in the charge.[9] When, under general rules of procedural default, an appellate court holds a defendant has procedurally defaulted a particular claim by not timely raising it in the trial court, the appellate court does not concede that "error" has occurred. In these situations, all the appellate court is saying is that it will not address the merits of a claim raised for the first time on appeal. This is important because *Almanza* does not apply unless the appellate court first finds "error" in the jury charge. See *Almanza*, 686 S.W.2d at 174 (analytical framework applies to jury charge "error").

---

**6.** If Article 36.14 imposes such a duty, then a trial court "errs" in failing to *sua sponte* instruct the jury on a defensive issue that is raised by the evidence.

**7.** See Tex.R.App.Proc. 33.1(a).

**8.** *Other statutory provisions referenced in Article 36.19 are consistent with this interpretation of Article 36.14.* For example, Article 36.15, V.A.C.C.P., provides that when a defendant has made objections to the charge or has requested instructions or both and the trial court does not respond to these objections or requests, the "objections or requested charges *shall not be deemed to have been waived* by the party making or requesting the same." (Emphasis Supplied). This is further evidence that the Legislature does not intend to allow a defendant to complain for the first time on appeal about the omission of defensive issues in the jury charge. On the contrary, the Legislature has clearly stated in several of the *statutory provisions referenced in Article 36.19* that a defendant must object to the charge before he may be heard to complain on appeal. See Article 36.14; Article 36.15; Article 36.16, V.A.C.C.P., (after a defendant has objected to the charge or has requested special instructions in the charge, "no further exception or objection shall be required of the defendant *in order to preserve*" these objections or exceptions). (Emphasis Supplied).

**9.** It has been suggested that our decision in this case effectively overrules *Almanza*. We disagree. Our decision in this case in no way undercuts or limits *Almanza's* analytical framework in cases to

which *Almanza* applies. For example, Article 36.14 clearly mandates that a defendant must object to claimed "errors" of commission and omission in the charge before he may be heard to complain on appeal. When *Almanza* speaks of "errors" of commission and omission in the court's charge, it speaks of issues upon which a trial court has a duty to instruct without a request or objection from either party ( in which case the failure to instruct would constitute "error" with *Almanza's* "some" harm standard or "egregious" harm standard applying depending on whether the defendant objected to the claimed "error" of commission or omission) or of issues that have been timely brought to the trial court's attention (in which case *Almanza's* "some" harm standard would apply since the defendant brought the claimed "error" of commission or omission to the trial court's attention).

Our decision in this case gives effect to Article 36.19 as interpreted by *Almanza* and to the other statutory provisions referenced in Article 36.19. A contrary holding in this case would render the clear legislative intent of Article 36.14 meaningless by permitting a defendant to complain for the first time on appeal about the omission of a defensive issue in the court's charge. Article 36.14 clearly contemplates that a defendant must bring any claimed "error" of commission or omission in the jury charge to the trial court's attention before he may be heard to complain on appeal. See Article 36.14 ("Compliance with the provisions of this Article is all that is necessary to preserve, for review, the exceptions and objections presented to the charge and any amendment or modification thereof.").

Article 36.14 also mandates that a trial court submit a charge setting forth the law "applicable to the case." The question in this case is whether this imposes a duty on trial courts to *sua sponte* instruct the jury on unrequested defensive issues.[10] We hold Article 36.14 imposes no such duty.

A holding that Article 36.14 imposes such a duty on trial courts would render the portion of Article 36.14 just discussed as well as its clear legislative intent meaningless. Our holding that Article 36.14 imposes no duty on trial courts to *sua sponte* instruct the jury on unrequested defensive issues also is consistent with general rules of procedural default and the policies they promote. See Tex. R.App.Proc. 33.1(a); *Marin v. State*, 851 S.W.2d 275, 278 (Tex.Cr.App.1993) (rights of litigants in our system of adjudication are usually forfeited by a failure to exercise them); *Lankston v. State*, 827 S.W.2d 907, 909 (Tex.Cr.App.1992) (rules of procedural default require a defendant to object "at a time when the trial court is in a proper position to do something about it"); see also *Norris v. State*, 902 S.W.2d 428, 446 (Tex.Cr. App.), cert. denied, 516 U.S. 890, 116 S.Ct. 237, 133 L.Ed.2d 165 (1995) (one reason rules of procedural default require a timely objection is to provide the trial court or the other party an opportunity to remove the basis of the objection).[11]

Therefore, consistent with general rules of procedural default as well as the policies expressed in other portions of the statutory provisions referenced in Article 36.19, we decide a defensive issue is not "applicable to the case" for purposes of Article 36.14 unless the defendant timely requests the issue or objects to the omission of the issue in the jury charge.[12] Moreover, with one exception that we discuss in the next paragraph, this Court has never held a trial court commits "error" by failing to *sua sponte* instruct the jury on a defensive issue.

In *Williams v. State*, this Court effectively held the trial court erred in not *sua sponte* instructing the jury on the defensive issue of "release in a safe place" at the punishment phase of an aggravated kidnapping prosecution. See *Williams v. State*, 851 S.W.2d 282, 284, 287 (Tex.Cr.App.1993) (trial court's failure to instruct the jury on the defensive issue of "release in a safe place" was "error" even though the defendant did not object to the absence of this instruction in the jury charge). However, the main issue this Court addressed in *Williams* was which party bore the burden of persuasion on the defensive issue once the evidence raised the issue. See *Williams*, 851 S.W.2d at 285–87.

This Court more or less assumed in *Williams* without any discussion that the trial court had a duty to instruct the jury on the defensive issue if the evidence raised it even though the defendant failed to request it or object to its absence in the jury charge. However, the questions of whether evidence raises a particular defensive issue and of when a trial court has a duty to instruct the jury on a particular defensive issue are different questions. Though the evidence might raise a defensive issue, it does not necessarily follow that a trial court has a duty to *sua sponte* instruct the jury on that issue when the defendant does not request such an instruction.

---

**10.** In other words, is an unrequested defensive issue that is raised by the evidence "applicable to the case?"

**11.** For example, in this case had appellant timely objected to the absence of the mistake of fact instruction in the jury charge, the trial court would have had an opportunity to remove the basis of appellant's objection by submitting the issue to the jury thus making it unnecessary for the Court of Appeals and now this Court to expend all these resources in deciding whether appellant may now complain for the first time on appeal about the absence of the mistake of fact defense in the charge. Appellant could have saved everyone a lot of time and trouble by simply making a timely objection in the trial court. Under these circumstances, he should not be heard to complain about the absence of the mistake of fact instruction in the jury charge.

**12.** Of course, *Almanza* should be applicable to the omission in the jury charge of a defensive issue which a defendant timely requests and which is raised by the evidence. See *Almanza*, 686 S.W.2d at 171–74. In these circumstances, the defensive issue is "applicable to the case" primarily because the defendant timely requests the issue when the trial court is in a proper position to do something about it. See *Lankston*, 827 S.W.2d at 909.

Moreover, *Williams* was based on prior V.T.C.A., Penal Code, Section 20.04(b), which provides that aggravated kidnapping is a first degree felony unless the actor voluntarily releases the victim alive and in a safe place in which event the offense is a second degree felony. See Acts 1973, 63rd Leg., p. 883, ch. 399, Section 1, eff. January 1, 1974. Apparently in response to this Court's decision in *Williams*, the Legislature amended Section 20.04. See Acts 1995, 74th leg., ch. 318, Section 4, eff. September 1, 1995.

V.T.C.A., Penal Code, Section 20.04(d), now expressly requires *the defendant to raise the issue* of whether he voluntarily released the victim in a safe place and he has to prove "the issue in the affirmative by a preponderance of the evidence" at the punishment phase of an aggravated kidnapping prosecution. Under current Section 20.04(d), for a defendant to be entitled to a jury instruction on the defensive issue of "release in a safe place," it is not sufficient that the evidence raises the issue as this Court apparently assumed in *Williams*. The defendant also will have to object to the absence of an instruction on the issue in the court's charge or otherwise bring the matter to the trial court's attention if he wants to complain on appeal about the absence of the *instruction on the issue in the court's charge*. If *Williams* was decided today, this Court would have to hold the trial court had no duty to instruct the jury on the defensive issue of "release in a safe place" because the defendant failed to raise the issue by objecting to the absence of an instruction on the issue in the court's charge. See Section 20.04(d).

We decline to follow an opinion— *Williams*—that effectively has been overruled by the Legislature. The Legislature's amending Section 20.04(b) in response to this Court's opinion in *Williams* is further evidence that the Legislature does not intend to impose a duty on trial courts to *sua sponte* instruct the jury on defensive issues.

Finally, our holding in this case is consistent with many cases from this Court deciding that which defensive issues to request are strategic decisions generally left to the lawyer and the client. See, e.g., *Vasquez*, 830 S.W.2d at 950 fn. 3 (though competent defense counsel recognizes a particular defense might be available to a particular offense, he could also decide for strategic reasons not to request the defense). For example, in a case like this, the lawyer and the client could decide not to request the defensive issue and risk losing their credibility with the jury because the evidence raising the defense is so unworthy of belief.[13] Decisions as to the defensive theory of a case should be left to the defendant and his lawyer. This also is consistent with Article 36.14's mandate permitting a defendant to request various charges at the risk of procedural default by his silence.

Moreover, a contrary holding in this case could impose on defendants unwanted defensive issues in the charge. We ultimately would be confronted with a case where a trial court gave a jury instruction on a defensive issue raised by the evidence with a defendant complaining about it on appeal. A contrary holding in this case also would be inconsistent with other legislative enactments intended to discourage parties from sandbagging or lying behind the log "to belatedly raise issues of error." See *Janecka v. State*, 823 S.W.2d 232, 244 (Tex.Cr.App.1990) (op. on reh'g). In other words, a contrary holding might encourage a defendant to retry the case on appeal under a new defensive theory effectively giving him two bites at the apple.

It has been suggested that our holding is inconsistent with the "special rule" of Article 36.19 and *Almanza* because *Almanza* specifically refers to errors of commission and omission and gives them equal treatment. However, this begs the question and fails to take into account the "plain" language of Article 36.14 which clearly mandates that a defendant must object to claimed "errors" of commission and omission in the charge before he may be heard to complain on appeal. Moreover, when *Almanza* speaks of "erroneous" omissions of issues in the court's charge,

---

13. Even appellant's own cousin testified he thought it a "bit unusual" that appellant would be driving a 1988 black Jaguar.

it speaks of omissions of issues upon which a trial court has a duty to instruct without a request from either party or issues that have been timely brought to the trial court's attention. See, e.g., *Almanza*, 686 S.W.2d at 172 (e.g., error involving the omission of an entire element from the application paragraph of the court's charge); see also *Geesa v. State*, 820 S.W.2d 154, 161–62 (Tex.Cr.App. 1991) (definitional instruction on "reasonable doubt" shall be submitted to jury in all criminal cases even in absence of objection or request by state or defendant). Our decision in this case in no way undercuts or limits *Almanza's* analytical framework in cases to which *Almanza* applies.[14]

We reverse the judgment of the Court of Appeals and affirm the trial court's judgment.

MANSFIELD, Judge, concurring.

The issue before us is whether the trial court has an affirmative duty to incorporate, as part of its charge to the jury, an instruction as to a defensive theory conceivably raised by the evidence where such instruction was not requested by the defendant nor was there any objection by the defendant to the charge given. Because I believe that finding such a duty would place an unreasonable burden on the trial courts of Texas, I join the opinion of the Presiding Judge. I write separately, however, as it is my opinion that appellant may well have a claim of ineffective assistance of counsel.

Texas Code of Criminal Procedure Article 36.14 provides, in relevant part:

> Before said charge is read to the jury, the defendant or his counsel shall have a reasonable time to examine the same and he shall present his objections thereto in writing, distinctly specifying each ground of objection. Said objections may embody errors claimed to have been committed in the charge, as well as errors claimed to have been committed by the omissions therefrom or in failing to charge upon issues arising from the facts, and in no event shall it be necessary for the defendant or his counsel to present special requested charges to preserve or maintain any error assigned to the charge, as herein provided.

The intent of the Legislature is evident: to preserve an error of *omission or commission* in the jury charge, the defendant must object *in writing* (or by dictation into the record) *before* the charge is read to the jury. In the present case, appellant did not object to the charge in any way, much less in the manner prescribed by Article 36.14. However, as Article 36.14 has not been amended or changed since 1981, our inquiry cannot end there, given our case law since 1981. In *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim. App.1984), this Court established a framework by which claimed errors, whether or not preserved, in the jury charge were to be analyzed on appeal.

*Almanza*, essentially, eliminates the necessity of proper preservation of a claimed jury charge error, whether it be an error of omission or commission, as mandated by Article 36.14. Instead, a claimed jury charge error is analyzed based on whether the error is "fundamental" error or "ordinary" error. If an error has been properly preserved by objection, reversal will result as long as the error is not harmless.

> On the other hand, if no proper objection was made at trial and the accused must maintain that the error was 'fundamental,' he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'— in short 'egregious harm.'

---

14. It also is worth mentioning that the author of *Almanza*—the Honorable Judge Clinton—pointed out in another case that the statutory "precursors" to Article 36.19 had been interpreted as not requiring a trial court "to give instructions not asked for by" a party and a trial court's failure to do so is not "error." See *Walker v. State*, 823 S.W.2d 247, 249–50 fn. 2 (Tex.Cr.App.1991) (Clinton, J., concurring), cert. denied, 503 U.S. 939, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992) (court is not bound in any case to give instructions not asked for by the party and the mere "omission" to give instructions is not "error").

Moreover, the author of this opinion was on the Court when *Almanza* was decided and the author's recollection is that *Almanza* primarily was intended to do away with the "automatic reversal" rule for jury charge "error." It was not intended to impose a duty on trial courts to *sua sponte* instruct the jury on defensive issues.

In both situations the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.

*Almanza, supra,* at 171.

However, *Almanza* is at least somewhat consistent with Article 36.19, which provides that where any requirement of Articles 36.14 through 36.18 has been disregarded, the judgment shall not be reversed "unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial." In my opinion, this is effectively a definition of "fundamental (or egregious) error": an error either calculated to harm the defendant's rights *or* an error that denies the defendant's right to a fair trial. Yet, the last sentence of Article 36.19 provides that objections to the charge and to the refusal of special charges shall be made at the time of trial, essentially mirroring the mandate of Article 36.14 that charge errors, whether they be errors of commission or omission, must be properly preserved to be raised on appeal.

*Almanza,* in my opinion, is a resolution of the apparent conflict contained within Article 36.19 as well as the apparent conflict between Article 36.14 and all but the last sentence of Article 36.19. When viewed as a whole, jury charge error whether it be one of commission or one of omission, will result in reversal *where not preserved in accordance* with Articles 36.14 and 36.19 only where the error was *calculated to injure the defendant or resulted in denial of defendant's right to a fair trial,* or, in other words, was a fundamental or egregious error.[1]

In the present case, appellant avers the trial court erred by omission—in failing to *sua sponte* instruct the jury on the defense of mistake of fact. Appellant never requested an instruction as to the defense of mistake of fact, nor did he object to the charge

actually given to the jury. Therefore, to prevail on appeal due to his failure to preserve this alleged error, appellant must show the error was egregious. The court of appeals found the absence of an instruction on the defense of mistake of fact was an error so egregious that it denied the appellant a fair trial. *Posey v. State,* 916 S.W.2d 88, 91 (Tex.App.—Houston [1st Dist.] 1996).

While I agree the lack of an instruction as to the defense of mistake of fact denied appellant a fair trial in this case, the error is not one of failure of the trial court to properly instruct the jury. Rather, appellant was denied his right to a fair trial due to ineffective assistance of counsel in failing to request such an instruction.

In *Strickland v. Washington,* 466 U.S. 668, 687–694, 104 S.Ct. 2052, 2064–68, 80 L.Ed.2d 674 (1984), the Supreme Court established the two-part test for determining whether a defendant received ineffective assistance of counsel.

(1) Was counsel's performance so deficient that he was not functioning competently enough to satisfy the requirements of the Sixth Amendment ?

(2) Did counsel's deficient performance prejudice defendant, depriving him of a fair trial to such an extent that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different?

*Id.* A reviewing court must, however, presume that counsel was reasonably effective. *Id.* at 694, 104 S.Ct. at 2068.

The court of appeals cites an opinion of this Court which is instructive. In *Vasquez v. State,* 830 S.W.2d 948 (Tex.Crim.App. 1992), we held trial counsel's failure to request an instruction on the defense of necessity constituted ineffective assistance of counsel because the jury was "precluded from giving effect to the appellant's defense," rendering his conviction a "foregone conclusion." *Vasquez, supra,* at 951. A trial where, as here, the jury is effectively precluded from considering evidence showing a statutory de-

---

1. I note the Legislature has not acted to overrule *Almanza;* thus I do not agree that *Almanza* is

inconsistent with the intent of the Legislature underlying Articles 36.14 and 36.19.

fense like mistake of fact exists, is inherently unfair. The court of appeals carefully analyzed the record and found the evidence raised the defense of mistake of fact. This finding should be given due deference. *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App. 1997). Appellant, in my opinion, has likely satisfied both prongs of *Strickland* and is therefore probably entitled to habeas relief.[2] I join the opinion of the Court as I agree the trial court did not commit fundamental error by failing to instruct the jury as to the defense of mistake of fact.[3] Rather, appellant was denied a fair trial due to ineffective assistance of counsel, and, as this issue is not before us, we are not at liberty to address it. He is, of course, free to raise it by filing an application for habeas corpus relief.

WOMACK, Judge, concurring.

The issue in this case is the proper treatment, on appeal, of a court's charge that omitted an instruction on the defense of mistake of fact without objection or request from the defendant. The Court, on reasoning that is at odds with the leading case, *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1985), says that no complaint may be raised on appeal. I prefer to say that the complaint may be raised, but that it has no merit.

I.

The appellant was tried for the offense of unauthorized use of vehicle. The State's evidence was that a peace officer stopped the appellant in Harris County for driving a Jaguar automobile with an expired registration sticker. The appellant had no driver's license or proof of liability insurance. When the officer found out that the registered owner of the vehicle was a female from Corpus Christi, he asked the appellant whose car it was. The appellant said that he had gotten it from "Chuck," who lived in his neighborhood and whose last name and address he did not know. The officer noticed that the inside of the door was damaged and the wires to the alarm system had been cut. In the glove compartment were repair notes and bills with the name "Chuck," but no last name.

Wanda Thomas testified that she did not give the appellant permission to drive her automobile, which was usually driven by her boyfriend "Chuck" Williams. Williams testified that he had left the vehicle parked and locked at Hobby Airport in Houston three days before the appellant was stopped in it. There was a spare key in the console. Williams had not given the appellant permission to drive the vehicle.

The first defense witness was a friend from the appellant's neighborhood, who testified that he had seen a man called Charles Yates give the appellant the keys to the Jaguar on the day before the arrest. The friend had known Yates for a week or two; Yates had been staying with the friend for a week or so, and he showed up with a Jaguar. The friend introduced Yates to the appellant, and about twenty minutes later Yates gave the appellant the keys. The appellant also presented the evidence of his cousin, who said that on the day of the arrest the appellant picked him up and drove him in the Jaguar to the friend's house, where he saw Yates "hand back the keys" of the Jaguar to the appellant.

---

**2.** I recognize appellant did not raise, in his ground for review, he was denied a fair trial due to ineffective assistance of counsel. Ordinarily, the preferable means to raise ineffective assistance of counsel in this instance would be by filing an application for writ of habeas corpus under Article 11.07. Arguably, a preferable way to resolve this matter would be to vacate the judgment of the court of appeals and to remand the cause to the court of appeals to consider whether appellant received ineffective assistance of counsel due to counsel's failure to request a mistake of fact instruction. The court of appeals could elect to allow the parties to brief this issue before ruling.

**3.** I stress further it is unreasonable and would result in unreasonable delay in completion of trials to expect the trial court to examine the record for any possible defense and then instruct the jury accordingly. Often counsel, for sound strategic reasons, elects not to request instructions on certain defensive issues out of concern the jury may not believe the defense, may be confused by the instructions, or may encourage the jury to convict on a lesser-included offense when counsel's strategy is for an "all or nothing" verdict.

The court's charge to the jury required that, to convict, the jury find beyond a reasonable doubt that the appellant did "intentionally or knowingly operate a motor-propelled vehicle, namely an automobile, owned by Wanda Thomas, without the effective consent of Wanda Thomas...." The charge contained the full definition of the term "knowingly" in Section 6.03(b) of the Penal Code.[1]

The charge did not contain an instruction on the defense of mistake of fact. Neither party requested such a charge or objected to its omission.

The parties argued the merits of the defense case in terms of the culpable mental state of knowledge. The appellant's attorney argued to the jury that he should be acquitted because he did not know that he was driving the vehicle without the owner's consent:

> Then it [the jury charge] states he must intentionally and knowingly take it, exercise possession of the car without the effective consent of the owner. It was his impression that the owner was Mr. Yates who gave him the keys. That's all he did was obtained possession of the keys and drive the car. That is reasonable doubt enough.
>
> . . .
>
> It turned out later that it didn't—that person was not the rightful owner, but Mr. Posey had no knowledge at the time in which he had possession of the car he was driving. He didn't think that was the case. He thought Mr. Yates was the rightful owner of the car. Since he was in possession of it, he was driving it, had the keys, he gave the keys to him, for him to drive. That's all he did. That's as simple as that.

The prosecutor replied that there was no reasonable doubt that the appellant knew the car was stolen, because the defense evidence was incredible. She read the jury the definition of "knowledge" in the charge. The jury found the appellant guilty.

The court of appeals reversed the judgment of conviction because the absence of an instruction on the defense of mistake of fact was an error so egregious that it denied the appellant a fair trial. 916 S.W.2d 88 (Tex. App.—Houston [1st Dist.] 1996). We granted the State's petition for discretionary review.

## II.

In *Almanza v. State*, 686 S.W.2d 157 (Tex. Cr.App.1985), we carefully considered the meaning of Article 36.19 of the Code of Criminal Procedure, which reads:

> Whenever it appears by the record in any criminal action upon appeal that any requirement of Articles 36.14, 36.15, 36.17 and 36.18 has been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial. All objections to the charge and to the refusal of special charges shall be made at the time of trial.

We concluded that the statute embodies two standards of review. The standard for "error appearing from the record [that] was calculated to injure the rights of defendant" applies to errors in overruling objections to the charge which were made in the trial court under Article 36.14, or in refusing, or failing to respond to, requested special charges which were presented to the trial court under Article 36.15. The standard for reversal when "it appears from the record that the defendant has not had a fair and impartial trial" applies to errors that were not brought to the trial court's attention by objection or request. The latter standard is "[a]n independent basis for reversal [which] arises if the error, even though not timely objected to, is so egregious and creates such harm that it deprives the accused of a 'fair and impartial trial.'" *Id.* at 172. This latter

---

1. "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result."

The charge of the court reversed the order of these sentences in the Penal Code.

standard in Article 36.19 is "the basic test for fundamental error." *Ibid.*

The State argues that this basic test does not apply to the omission of a defensive instruction from the charge for three reasons: (1) There was no error in the charge because it contains no incorrect instructions. (2) There cannot be error in omitting law from a charge when no instruction was requested. (3) A trial judge should not decide *sua sponte* which defensive issues should be charged because such decisions are matters of strategy to be determined by counsel. These arguments are inconsistent with the statutes that regulate the charge of the court, which are incorporated in Article 36.19 by its terms.

The State's first argument is that a jury charge is free of error no matter what it omits, so long as it contains no errors of commission. This disregards the statutes and our decisions. Article 36.14 of the Code of Criminal Procedure treats errors of commission and omission on an equal footing. The statute makes a charge objectionable if it contains "errors claimed to have been committed in the charge, as well as errors claimed to have been committed by omissions therefrom or in failing to charge upon issues arising from the facts."

The *Almanza* opinion also gave equal treatment to fundamental errors of commission and omission. It specifically commended four previous decisions as having "stated the test properly." 686 S.W.2d, at 172. Two of the four exemplary precedents dealt with errors of omission: *Harris v. State,* 522 S.W.2d 199 (Tex.Cr.App.1975) (fundamental error in omission of application paragraph),[2] and *Boles v. State,* 598 S.W.2d 274 (Tex.Cr. App.1980) (applying fundamental error test to the omission of a instruction on a lesser included offense).

The same precedents are disregarded by the State's second argument, that there cannot be errors of omission in the absence of a requested instruction. *Almanza* would be stood on its head by acceptance of this argument. It is likewise in disregard of Article 36.14 of the Code of Criminal Procedure,

which says that, for errors of commission or omission, "in no event shall it be necessary for the defendant or his counsel to present special requested charges to preserve or maintain any error assigned to the charge, as herein provided."

The Court has created another version of this argument by reasoning thus: *Almanza* is based on Article 36.19. Article 36.19 only applies when the requirements of Article 36.14 have been "disregarded." Article 36.14 only applies when a party objects; when a party does not object, Article 36.14 the requirements of Article 36.14 have not been disregarded. Therefore when a party does not object to the omission of a defensive charge, there is no error and Article 36.19 and *Almanza* do not apply. *See ante* at 60–62.

On the one hand this argument proves too much. If there is no error when a party does not object, there cannot be fundamental errors in the jury charge. This makes *Almanza* not only wrong, but unnecessary. Of course, it also leaves us with the question, why are there two standards of harm in Article 36.19 if there are not two classes of error in the jury charge? It is ironic that, while proclaiming to vindicate the legislative intent of Article 36.14, the Court frustrates legislative intent by effectively repealing part of Article 36.19.

On the other hand the Court's argument proves too little. Why is the holding limited to defensive issues? There is nothing about the analysis that differentiates defensive issues from any other matter in the jury charge. The linchpin of the opinion is, "Therefore, under this portion of Article 36.14, there generally is no 'error' in the charge unless the defendant objects in writing to claimed 'errors' of commission and omission in the charge." *Ante* at 61. This principle is not limited to defensive issues.

While denying that it has overruled *Almanza* (*ante* at 61 n. 9), the Court has delivered an opinion that directly contradict the basis of *Almanza*'s reasoning. The confusion that will ensue is especially regrettable because, as Part IV of this opinion demon-

---

**2.** *Accord, e.g., Perez v. State,* 537 S.W.2d 455 (Tex.Cr.App.1976).

strates, the same result would be reached by the application of *Almanza*'s principles.

The State's third argument, that the decision whether to instruct the jury on defensive issues raised by the evidence is a strategic one for counsel rather than a legal one for the court, also is contradicted by statute and decision. Our law requires that "the judge ... shall ... deliver to the jury ... a written charge distinctly setting forth the law applicable to the case...." Code of Criminal Procedure, Article 36.14.

> Art. 36.14, V.A.C.C.P., places the legal duty and responsibility on the trial judge to prepare for a jury a proper and correct charge on the law, and the law as may be applied to the facts adduced. This is a legal duty which must be performed by the trial judge. It may not be delegated to the attorneys for the respective parties ... or anyone else for that matter.

*Doyle v. State,* 631 S.W.2d 732, 738 (Tex.Cr. App.1982) (plurality opinion). The judge must deliver a charge even if the parties expressly waive it. *Garrett v. State,* 159 Tex.Crim. 203, 262 S.W.2d 414 (1953).

In our system the parties are adversaries; the judge is not. The parties may make strategic decisions whether to present evidence, and the evidence will determine what law must be applied. To that extent the adversaries' decisions affect the court's charge. But the charge is the judge's. It is not under the control of the adversaries. When the evidence is closed, the judge's duty to charge on the applicable law is no longer subject to the strategic decisions of the parties.[3] (Of course a request for a charge estops the requesting party from complaining on appeal that it was error to give the charge. *Livingston v. State,* 739 S.W.2d 311, 341 (Tex.Cr.App.1987) (collecting cases). By the same reasoning, an objection to a charge should estop the objecting party from com-

plaining on appeal that the charge was not given.)

### III

Although its primary contention is that there is no such thing as fundamental error by omission of an instruction, the State also argued in the court of appeals that the evidence did not raise the defense of mistake of fact, and it raised in its petition for discretionary review the contention that "there was no error and no fundamental error was required" (*sic*). Given these arguments and the close relationship between the standard of harm and the concept of fundamental error,[4] it is appropriate to consider also the court of appeals' holding that the omission of the instruction was egregious error.

The questions are whether the defense of mistake of fact is available in a trial for unauthorized use of vehicle, whether it was raised by the evidence, and whether its omission without objection or request deprived the appellant of a fair and impartial trial.

The appellant was indicted for unauthorized use of vehicle, that is, intentionally or knowingly driving or operating another's motor-propelled vehicle without the effective consent of the owner.[5] A defendant's knowledge of the lack of consent is one of the elements which must be proven. *McQueen v. State,* 781 S.W.2d 600 (Tex.Cr.App.1989); *Gardner v. State,* 780 S.W.2d 259 (Tex.Cr. App.1989).

The appellant admitted driving another's vehicle as alleged by the indictment. His defense was apparent consent: a new acquaintance had given him possession of, and permission to drive, the vehicle. This Court has held that such evidence raises the defense of mistake of fact, and that the court's charge should instruct the jury on the law of that defense. *Lynch v. State,* 643 S.W.2d

---

3. Except in the sense that adversaries, by making "improper argument of counsel" to the jury, may make it necessary to give a further charge. Tex. Code Crim. Proc. Art. 36.16.

4. "We hold that finding error in the court's charge to the jury begins—not ends—the inquiry; the next step is to make an evidentiary review

... as well as a review of any other part of the record as a whole which may illuminate the actual, not just theoretical, harm to the accused." *Almanza v. State,* 686 S.W.2d 157, 174 (Tex.Cr. App.1984).

5. Tex. Penal Code § 31.07.

737 (Tex.Cr.App.1983).[6] It was error to omit an instruction on this defense.

## IV.

The final question is whether the omission of the instruction on the defense of mistake of fact was so egregious as to deprive the appellant of a fair and impartial trial. The actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Cr.App.1985).

The defense of mistake of fact is codified in Section 8.02(a) of the Penal Code:

> It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense.

The statutory term "kind of culpability" means "culpable mental state." *Beggs v. State,* 597 S.W.2d 375 (Tex.Cr.App.1980). The defense arises, then, when there is evidence that a defendant's mistaken, reasonable belief about a matter of fact negated the element of the culpable mental state required for the offense.

This peculiar aspect of the defense of mistake of fact puts it astride two principles in the law of the jury charge. While it is true that a defendant is entitled to an affirmative submission of a defensive issue, it is likewise true that no affirmative charge need be given when a defensive theory merely negates an element of the offense. *Sanders v. State,* 707 S.W.2d 78, 81 (Tex.Cr.App.1986) (collecting

cases).[7] Had the Legislature not codified the defense of mistake of fact, we might be free to say that the jury charge could, and should, handle the issue adequately by requiring the jury to find the element of the culpable mental state in order to convict. But the power to create and define defenses is the Legislature's, and a court should not disregard its choice.[8] Nevertheless, the close relationship between the defense of mistake of fact and the culpability element of the offense is important in the consideration of the harmfulness of the omission of an instruction on the defense.

The court of appeals overlooked this aspect of the defense of mistake of fact when it said (916 S.W.2d, at 91):

> In a similar situation, the Court of Criminal Appeals has held that trial counsel's failure to request an instruction on the defense of necessity constituted ineffective assistance of counsel because the jury was "precluded from giving effect to the appellant's defense," rendering his conviction "a foregone conclusion." *Vasquez v. State,* 830 S.W.2d 948, 951 (Tex.Crim.App.1992).

This case is not like *Vasquez,* because the defense of necessity is different from that of mistake of fact.[9] Necessity is more than a negation of an element of the offense; in fact, it requires the defendant to admit the commission of the offense and to justify it.[10] *Vasquez* had no law in the charge to support a defense of necessity.

In this case the jury could give effect to the defense of mistake of fact. The charge permitted, and even required, the jury to find the appellant not guilty if there was a reasonable doubt about the culpable mental state—his knowledge that he did not have

---

6. *Accord, e.g., Woodfox v. State,* 779 S.W.2d 434 (Tex.Cr.App.1989). Dicta to the same effect appear in, *e.g., Willis v. State,* 790 S.W.2d 307 (Tex.Cr.App.1990); *McQueen v. State, supra; Gardner v. State, supra.*

7. This familiar principle in *Sanders* was not affected by the subsequent disavowal of other language in the opinion. See *Willis v. State, supra* n. 6, 790 S.W.2d at 313–14.

8. *See Willis v. State, supra* n. 6, 790 S.W.2d at 313–14.

9. The defense of necessity was created in Tex. Penal Code § 9.22.

10. *Accord, Auston v. State,* 892 S.W.2d 141, 145 (Tex.App.—Houston [14th Dist.] 1994). Not contrary is the holding in *Thomas v. State,* 662 S.W.2d 677, 679 (Tex.App.—Dallas 1983), *aff'd,* 678 S.W.2d 82 (Tex.Cr.App.1984), that a defendant may rely on the defense of necessity and deny committing the offense; such a defendant was presenting inconsistent defenses, one of which required him to admit committing the offense because it was necessary.

consent to drive the vehicle. The charge fully defined "knowingly," and the application paragraph required the jury to find that the appellant acted knowingly. (The adequacy of the charge may explain why the appellant did not request a separate defensive issue of mistake of fact.) The appellant had no difficulty in presenting his defense under the charge that was submitted, by arguing to the jury that his evidence showed he did not know the vehicle was stolen. The State met his argument directly. The defensive issue was squarely presented to the jury by the charge.

The omission of the defensive charge on mistake of fact did not deny the appellant a fair and impartial trial under the standard in Article 36.19 for error in the jury charge when there was no objection or requested special charge.

It is worth noting that the *Almanza* standard for finding reversible error in the omission of a charge without objection—the denial of a fair and impartial trial—is so high that when it is met, the defense attorney's failure to object would almost always amount to ineffective assistance of counsel. *See, e.g., Vasquez v. State,* 830 S.W.2d 948, 951 (Tex. Crim.App.1992). Therefore the new rule that the Court adopts today will have no practical effect when defensive charges are omitted, while it unnecessarily contradicts the valuable analysis of *Almanza.*

I respectfully decline to join the Court's opinion.

MEYERS, Judge, dissenting.

The majority holds a defensive issue does not become "applicable to the case" until a jury charge on the issue is requested by the defendant. This holding stands in stark contrast to recent precedent which rejects the notion that parties are responsible for ensuring that the charge embodies their respective "theories of the case." *See Malik v. State,* 953 S.W.2d 234 (Tex.Crim.App.1997). There are other problems with the majority's holding. I dissent.

I.

Code of Criminal Procedure article 36.14, *Charge of the Court,* provides "the judge shall ... deliver to the jury ... a written charge distinctly setting forth the law applicable to the case." The majority says a defensive issue does not become "applicable to the case" unless the defendant either requests an instruction on that issue or objects to the omission of an instruction. *Posey v. State,* 966 S.W.2d 57, 62 (Tex.Crim.App. 1998). This Court has never articulated such a principle.[1] The responsibility for deciding what law is applicable to the case falls squarely on the shoulders of the trial judge. Parties can attempt to have an impact on what law will be applicable to the case through the presentation of evidence, and by requesting instructions on issues raised thereby. But an issue does not become "applicable to the case" by virtue of a party requesting an instruction on it at the end of the presentation of evidence; rather law becomes applicable to the case through-out the course of trial, when raised by the evidence.[2]

---

**1.** The majority says its holding "is consistent with *many cases* from this Court deciding that which defensive issues to request are strategic decisions generally left to the lawyer and client." *Posey,* slip op. at 63 (emphasis added). In support of this assertion, the majority cites a footnote from a single case, *Vasquez v. State,* 830 S.W.2d 948 (Tex.Crim.App.1992). In that case, we concluded counsel was ineffective by failing to request an instruction on the defensive issue of necessity where it was raised by the evidence. The dissenters contended the Court should not decide the issue on direct appeal, but a habeas corpus proceeding would be more appropriate to determine if defense counsel "might have intentionally opted not to request and argue a necessity defense" due to the implausibility of the defen-

dant's testimony. *Id.* at 951 (Benavides, J., joined by McCormick, P.J. and White, J., dissenting). The majority in *Vasquez* thus rejected the notion that, although raised by the evidence, counsel might have chosen not to urge the defense.

**2.** A trial court's rulings made through-out the course of trial are always viewed in light of the "law applicable to the case." *See, e.g., Rhodes v. State,* 945 S.W.2d 115, 120 & n. 3 (Tex.Crim. App.), *cert. denied,* —— U.S. ——, 118 S.Ct. 236, 139 L.Ed.2d 167 (1997)(affirming Court of Appeals' upholding of trial court's ruling on motion to suppress, noting that Court of Appeals' decision was found evidence admissible on "theory of law, applicable to the case" but not argued

The majority finds it "worth mentioning that the author of *Almanza*—the honorable Judge Clinton—pointed out in [*Walker v. State*, 823 S.W.2d 247, 249–50 fn. 2 (Tex.Crim.App.1991)(Clinton, J., concurring), *cert. denied*, 503 U.S. 939, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992)] that the statutory 'precursors' to Article 36.19 had been interpreted as not requiring a trial court 'to give instructions not asked for by' a party and a trial court's failure to do so is not 'error.'" *Posey*, at 64 fn. 14. Judge Clinton's concurring opinion in *Walker is* worth mentioning here for its historical view of article 36.14, which supports, rather than contradicts, the principle that the trial court, not the parties, decides what law is "applicable to the case" based on the evidence. Following is an extensive excerpt from Judge Clinton's discussion:

> As the language [of article 36.14] suggests, that *a trial court is to charge the jury on the law applicable to the facts of the case is a requisite* prescribed in like terms by Old Code articles 594–595. See generally *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1985)(Opinion on Rehearing, at 161). But there were several precursors.

> First, in an effort to placate restless "Texians," the congress of the State of Coahuila and Texas offered a "Plan for the Better Regulation of the Administration of Justice in Texas;" "Of the Trial Criminal Plenario" provided that after all testimony and argument by the parties, *"The judge shall then make such observations upon the evidence and facts deduced in the trial as he may think proper and necessary for the instruction of the jury,* who shall then retire for deliberation." Decree No. 277, article 72, (1834), 1 Gammel's Laws of Texas 364, at 372 ("Gammel's").

The following year, however, Texians created a Provisional Government of Texas with a plan of governance that, *inter alia*, implicitly rejected the "Texas Plan" in favor of their own preference for common law, *viz*:

> "All trials shall be by jury, and in criminal cases the proceedings shall be regulated and conducted upon the principles of the common law of England[.]"

Plan and Powers of the Provisional Government of Texas, article VII (Nov. 13, 1835), 1 Gammel's 911. Similarly the Constitution of the Republic directed Congress to introduce by statute the common law of England, and mandated that "in all criminal cases, the common law shall be the rule of decision." Article IV, § 13, Id., at 1074. Congress soon passed an Act to establish jurisdiction and powers of district courts, § 43 of which provided:

> "No judge of any of said courts shall charge the jury as to the weight of the evidence in any cause civil or criminal, but *such judge may sum up the testimony, and shall charge the jury as to any matter of law arising thereon* [.]"

Act of December 22, 1836, § 43, Id., 1258, at 1269–1270.

Shortly after gaining statehood the Legislature passed an Act to Regulate Proceedings in District Courts, § 99 of which provided in pertinent part, *viz*:

> "... After the argument of a cause, and before the jury retires from the bar, the judge may deliver a charge to the jury, but under the following restrictions and regulations: the judge shall not in any case, civil or criminal, charge or [comment] on the weight of the evidence or testimony, and he shall so frame his charge as to submit questions of facts to the decision of the jury, and he *shall*

before trial court); *McDuff v. State*, 939 S.W.2d 607, 619 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997)(trial court's decision will be sustained if correct on any theory of "law applicable to the case", especially with regard to admission of evidence); *Atkinson v. State*, 923 S.W.2d 21, 27 (Tex.Crim.App.1996)(stating "law applicable to a case plainly includes laws from any source concerning which a jury instruction is necessary for resolution of the factual issues presented");

*Jones v. State*, 833 S.W.2d 118, 125 (Tex.Crim. App.1992), *cert. denied*, 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 678 (1993)(trial court's evidentiary ruling should not be disturbed on appeal if correct on any theory of "law applicable to the case"). If law does not become "applicable to the case" until the end of trial when the parties make their respective objections and requests, how can the trial judge possibly make rulings based on the law "applicable to the case?"

*decide on and instruct them as to the law arising on the facts,*[emphasis in original] distinctly separating all questions of law from questions of fact; and no judge shall, in any case, make any further charge, unless on the application of the jury or a party."

Act of May 13, 1846, § 99, 2 Gammels' 1669, at 1696. Under that statement of requisites the Supreme Court of Texas would say:

> "*It, undoubtedly, was ... the duty of the Judge, to give in charge to the jury the law of the case, without regard to what had, or had not, been read to them by counsel, either for or against the prisoner.* * * * * *The Judge is the organ and expositor of the law, and is placed on the bench to explain it to the jury. It is not only his privilege, in all cases, but his duty, when called on, to state what the law is.* In the language of the Court of Appeals of Kentucky, 'If the Judge had not the right to decide on the law, error, confusion, uncertainty and licentiousness would characterize the criminal trial; and the safety of the accused might be as much endangered, as the stability of public justice certainly would be,' & c.—3 J.J. Marshall, 149. The jury are the exclusive judges of the facts. The Judge may not charge them as to the weight of evidence. 1 Stat. 209, Sec. 43; Acts of 1846, 390. It is their peculiar and exclusive province to weigh the evidence; and it is their duty to find the facts *alone from the evidence* [emphasis in original]; and to look for them in no other quarter whatever. For the law, it is their duty to look to the court. In the present case, they were not authorized to give the slightest weight to any admission or statements of counsel as to the facts. The prisoner's counsel had no authority to make any admission or statement, to supply the place or have the force of evidence against him. No confession of theirs could bind or affect him. Their admissions could not, in law, prejudice or affect his rights; nor could they be in anywise jeopardized by the assumption of any grounds whatever, upon which his defence may have been placed by his counsel. Whether those grounds were correct or incorrect, true or false, was wholly immaterial. That was not the question for the consideration of the jury, whose duty it was to decide the question of guilt or innocence, *upon the law as given them by the court, and the evidence as given by the witnesses* [emphasis in original], irrespective of any admissions by the prisoner's counsel, or any grounds upon which they may have rested his defence."

*Nels v. The State,* 2 Tex. 280, at 281–283 (1847) (original emphasis).

Still applying the 1846 statute, in similar vein the Supreme Court explained:

> "The error assigned in the charge of the court, is, in substance, that it does not distinguish and define the degrees of murder. But it must be observed that the mere omission to give instructions is not error. The court is not bound in any case to give instructions not asked for by the party. If the charge of the court was not satisfactory, it was the right of the defendant, or his counsel, to ask such instructions as he thought proper. ... It is no objection to the charge of the court, that it supposes the state of fact which the evidence showed really to exist, and deduced the legal conclusion applicable to such state of facts. *That is precisely what every charge should do. That is the design and purpose of giving instructions to the jury; it is to inform them respecting the law applicable to the particular case in hand; and the more exactly the charge is adapted to the very case, the more likely will the jury be to arrive at a correct conclusion in the application of the law to the fact. Instruction beyond what the facts call for can never subserve any beneficial purpose; and may mislead. The charge should be framed and is to be considered in reference to the facts of the case.* [emphasis in original] And we are of opinion that there was nothing in the evidence in this case to call for an exposition of the law upon the degrees of murder."

*O'Connell v. The State*, 18 Tex. 343, at 363 (1857). Accord: *Atkinson v. The State*, 20 Tex. 522,. at 529 (1857):

> "The court below, upon these facts, instructed the jury as to the law, by reading them the charge, *verbatim, in the Jordan case* [emphasis in original] (10 Tex. 492–4), and by giving them other charges, as asked by counsel for the prisoner, on the subjects of manslaughter, self-defense, and reasonable doubts. The question is, whether or not this charge of the court, with reference to the facts of this case, was not calculated to mislead the jury. The great jurists of England and America have never been able to devise a charge which would be applicable to every case. Indeed, so vain is the task, it has never been essayed. A charge, which may properly direct the minds of the jury to the true point in one case, may mislead the jury in another, where a different turning point is indicated by the facts of it. It may be erroneous, too, by failing to present the distinctions between the different grades of the offense, where the facts, conflicting and leading to different conclusions, require such distinctions to be drawn, so as to enable the jury to determine to which grade the offense belongs. *Mitchells' Case.* 5 Yerg. 350. By neglecting this, the jury may as easily be misled, as in any other way."

*Id.,* at 529.

The Old Code prescriptions for a charge to the jury were enacted against that background of prior statutes and previous decisions, and we are entitled to presume that the legislature was aware of those judicial constructions and had them in mind as it mandated trial judges to deliver "a written charge *distinctly* setting forth *the law applicable to the case.*" [emphasis in original] See Code Construction Act, 3 V.T.C.A., Government Code § 311.023.

*Walker,* 823 S.W.2d at 249–51 n. 2 (Clinton, J., concurring) (emphasis added except where indicated otherwise). Even a cursory reading of the above discussion reflects that it has always been, under all "precursors" to article 36.14, the province of the judge to instruct the jury on the law as raised by the evidence, irrespective of requests or objections by the parties.[3]

These principles are consistent with this Court's recent holding that, for purposes of measuring legal sufficiency of the evidence, we no longer view the jury charge as reflecting what the parties see as their respective theories of the case, but we now recognize that in every case there is a "hypothetically correct charge" accurately setting forth the law applicable thereto. *See Malik,* supra. The hypothetically correct charge does not appear to be dependent upon requests or objections by the parties.

Before *Malik,* the reviewing court viewed the State's theory of the case according to what the State elected to include in the charge. *Nickerson v. State,* 782 S.W.2d 887 (Tex.Crim.App.1990). Unless the State objected to the charge, we presumed the jury was correctly instructed on the theories advanced by the State:

> Absent an objection by the State, analysis of the State's theory of guilt must be approached from a viewing of the charge. While the evidence presented at trial may suggest alternate theories of criminal culpability, we reject them as a means to sustain the conviction. Because, in the case at bar, the State neither objected to the jury charge nor asked for a special charge, the charge stands technically correct and sound relevant to the theories of criminal responsibility charged, *viz:* appellant engaging in criminal conduct as primary actor, or appellant engaging in criminal conduct as primary actor *and* as a party.

**3.** The isolated portion of Judge Clinton's discussion in *Walker* which the majority says stands for the proposition "that the statutory 'precursors' to Article 36.19 had been interpreted as not requiring a trial court 'to give instructions not asked for by' a party and a trial court's failure to do so is not 'error,'" when read in context, shows that the requested charge pertained to a matter not raised by the evidence. *Walker,* 823 S.W.2d at 249–51 n. 2 (Clinton, J., concurring)("there was nothing in the evidence in this case to call for an exposition of the law upon [which the defendant requested]").

*Id.* at 890; *see also Stephens v. State,* 717 S.W.2d 338, 341 (Tex.Crim.App.1986)(where State "requested no special charges and made no objections to the court's charge ... [w]e may only assume therefore that the charge adequately represented the theory of guilt upon which the State prosecuted appellant").

That reasoning was rejected by a majority of this Court in favor of the idea that, at least with respect to the theory of prosecution, there is for each case a "hypothetically correct charge."[4] *See Malik,* supra. An appellate court can determine the theory of prosecution, and accordingly, the law applicable to the case, based upon the evidence presented, so as to fashion a "hypothetically correct charge." But as to defensive theories, the majority says, law only becomes "applicable to the case" by virtue of a defendant's request that it be included in the charge.[5]

## II.

The majority expends notable effort attempting to dismiss or somehow distinguish *Williams v. State,* 851 S.W.2d 282 (Tex.Crim. App.1993). They might as well overrule it because it can't be distinguished. In *Williams,* the defendant was convicted of aggravated kidnapping. At punishment the jury was instructed that kidnapping was a first degree felony. Section 20.04(b) of the Penal Code then applicable provided:

An offense under this section is a felony of the first degree unless the accused voluntarily releases the victim in a safe place, in which event it is a felony of the second degree.

*Id.* at 284 (quoting applicable Code provision). We agreed with the State that we should "construe section 20.04(b) to operate like a legal defense, with the initial burden of production on the accused, but the ultimate burden of persuasion on the State." *Id.* at 286. We observed that "[s]trictly speaking" the issue was not a " 'ground of defense' in the sense that it excuses or justifies commission of the offense." Rather, it only had the effect of mitigating punishment. We nevertheless determined to treat it like a defensive issue, and "[a]s is the case with a defense issue" the accused had the threshold burden of production, and then once the issue is raised the burden of persuasion shifts to the State to show the place the victim was released was not safe. We concluded there was evidence sufficient to support an inference that the place of release was safe, but the State had failed to offer any evidence that the place of release was not safe; therefore, the issue should have been submitted to the jury and the trial court's failure to do so was error. *Id.* at 286–87. Having found "error in the charge," due to the omission of the defensive issue, we said the next step was to apply a harm analysis under *Almanza.* We held the defendant had not suffered egregious harm. In reaching this conclusion, we considered the primary defenses offered by the defendant during trial (misidentification and alibi), the fact the issue of safe place was "not a hotly-contested issue at trial" and the fact the defense did not even mention the issue in closing argument.[6] *Id.* at 289.

---

4. The majority's holding today is consistent, however, with at least one other recent case restricting a trial court's discretion to decide what law is applicable to the case and instructing the jury accordingly. *See Arevalo v. State,* 943 S.W.2d 887 (Tex.Crim.App.1997)(holding trial court may *not* submit charge on lesser included offense except when test established in Royster, Aguilar and Rousseau is met) *compare id.* (McCormick, P.J., joined by Keller and Holland, J.J., dissenting); *id.* (Meyers, J., dissenting).

5. Apparently, the law regarding accomplice witnesses and anti-parties become "applicable to the case" even without the defendant's request for an instruction or objection to the charge, even though these instructions inure to the benefit of the defendant. *See, e.g., Saunders v. State,* 817 S.W.2d 688 (Tex.Crim.App.1991)(omission of instruction on accomplice witness testimony is error and subject to *Almanza* analysis, even absent objection to charge); *Solis v. State,* 792 S.W.2d 95 (Tex.Crim.App.1990). The majority does not explain on what basis a meaningful distinction can be made, for purposes of determining the existence of jury charge error, between the omission of defensive issues and the omission of these other issues that inure to the benefit of the defendant.

6. Consistent with these considerations, the failure of the defendant to request an instruction on a defensive issue would weigh against a finding of egregious harm.

The majority concedes *Williams* "held the trial court erred in not *sua sponte* instructing the jury on the defensive issue of 'release in a safe place'

### III.

Finally, the majority's interpretation of *Almanza v. State*, 686 S.W.2d 157 (1985)(opinion on reh'g), is wrong. The majority says omission of a defensive issue in the charge is not "error" in the charge absent a request or objection. To the contrary, *Almanza* specifically referred to omissions of defensive theories in the charge absent a request or objection. Discussing the determination of egregious error (the analysis which does not come into play unless the defendant failed to object to the charge), this Court in *Almanza* stated:

'... in determining whether the error is material ... we are to look to the whole record bearing upon the subject. What was the nature of the testimony supporting the verdict? Was it cogent and overwhelming? *What was the character of the testimony presenting the phase or theory of the case omitted to be noticed in the* charge, and upon which omission error is assigned? Was it at all reasonable? Did it present a theory which a reasonable mind could entertain, or was it supported by such testimony as was remotely calculated to destroy the State's case when considered in connection with the other testimony in the case, as well as the charge as a whole? Was the phase of the case simply an addition to the case as made by the State and consistent therewith, or was it in direct conflict with the State's theory? These are all important matters to be considered in passing upon the [degree of harm] in the *omission* or error....'

*Almanza*, 686 S.W.2d at 173–74 (quoting *Davis v. State*, 28 Tex.App. 542, 13 S.W. 994, 995 (1890), writ of error dism'd, 139 U.S. 651, 11 S.Ct. 675, 35 L.Ed. 300 (1891))(emphasis added).

The State does not contend the Court of Appeals' erred in the manner in which it

at the punishment phase of an aggravated kidnapping prosecution," *Posey*, at 62, but nevertheless views *Williams* as having no precedential value because the *Williams* Court "more or less assumed ... without any discussion" that the trial court had a duty to *sua sponte* submit an instruction on the defensive issue. *Id.* Despite the amount of discussion devoted to the issue, the fact remains *Williams* is directly contrary to the majority's holding. The majority reasons that *"Almanza* does not apply unless the appellate court first finds 'error' in the jury charge" and a trial court does not commit "error" by failing to *sua sponte* instruct on a defensive issue. But *Williams* held there was "error" in the jury charge due to the omission of a defensive issue raised by the evidence.

The majority "declines" to follow *Williams* because it says *Williams* has been "effectively" "overruled by the Legislature." *Posey*, at 63. The legislature does not "overrule" opinions of this Court; what they can do is pass legislation that will impact future cases. A subsequent legislative amendment of a provision at issue in a particular case has no bearing on the reasoning or holding of the Court as it pertained to the provision as written at the time of the opinion. Put another way, the Legislature's amendment of a penal code provision cannot possibly have any bearing on ancillary or general propositions of law pertaining to appellate review that were applied or discussed in a previous opinion. *See Grunsfeld v. State*, 843 S.W.2d 521 (Tex.Crim. App.1992) *see also Anderson v. State*, 932 S.W.2d 502, 510 (Tex.Crim.App.1996), *cert. denied* ___ U.S. ___, 117 S.Ct. 2517, 138 L.Ed.2d 1019 (1997)(citing *Grunsfeld* for proposition of law

even though code provision at issue in *Grunsfeld* was subsequently amended by legislature); *Marin v. State*, 891 S.W.2d 267, 272 (Tex.Crim.App.1994)(citing *Grunsfeld* for proposition of law regarding statutory construction even though code provision at issue in *Grunsfeld* was subsequently amended by legislature). Moreover, recognizing *Williams'* application here does not say anything about continued application of the code provision at issue there, but rather speaks to the broader notion applied in *Williams* that was unaffected by any subsequent penal code amendment—the application of *Almanza* to the omission of a defensive issue (*any* defensive issue) in the absence of a request or an objection. The majority says the "Legislature's amending Section 20.04(b) in response to this Court's opinion in *Williams* is further evidence that the Legislature does not intend to impose a duty on trial courts to *sua sponte* instruct the jury on defensive issues." *Posey*, at 63. The legislature amended section 20.04 after *Williams* to change "release in a safe place" from being treated like a defense to being treated like an affirmative defense. *Spakes v. State*, 913 S.W.2d 597, 605 fn. 1 (Tex.Crim.App.1996)(Keller, J., dissenting joined by McCormick, P.J.). That is the "proposition of law" that was affected by the subsequent legislative amendment. This amendment is irrelevant. to the proposition that the omission of any defensive issue in the jury charge is error that is subject to an *Almanza* analysis. Certainly, if the Legislature wanted to have an impact on the duty of trial courts to *sua sponte* instruct on defensive issues, they would be more likely to amend Code of Criminal Procedure article 36.19, rather than a random penal code provision.

conducted its egregious harm analysis under *Almanza;* rather the State's sole argument is that no such analysis should have been conducted.[7] Disagreeing with the State's sole contention, I would affirm the Court of Appeals.

BAIRD and OVERSTREET, JJ., join.

---

**7.** In his concurring opinion Judge Womack says "[t]he questions are whether the charge distinctly set forth the law applicable to the case and, if it did not, whether the failure to do so in the absence of an objection or request deprived the appellant of a fair and impartial trial." *Posey,* at 61 (Womack, J., concurring). Those were the questions before the Court of Appeals. "The questions" before this Court are those raised specifically in the petition for discretionary review. The State's petition does not claim the Court of Appeals erred in its conclusion that appellant was deprived of a fair and impartial trial.