11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Gary Nathaniel Davis

Appellant

Vs.                   No.
11-02-00218-CR B Appeal from Dallas County

State of Texas

Appellee

 

The jury
convicted Gary Nathaniel Davis of a state jail felony, “Unauthorized Use of a
Vehicle.”[1]
 The trial court assessed his punishment
at confinement in a state jail for 2 years and a fine of $300, but the trial
court suspended the imposition of confinement and placed appellant on community
supervision for a period of 4 years.[2]  We affirm.

                                                                   The
Indictment

The
indictment charged that, on or about August 4, 2000, appellant unlawfully
operated a vehicle without the effective consent of its owner. 

                                                                   Points
of Error

Appellant
presents five points of error. First, he argues that it was “fundamental error”
for the trial court not to charge the jury on the defensive issue of mistake of
fact.  Then, appellant argues that his
trial attorney rendered ineffective assistance of counsel because he failed to
request an instruction on that defensive issue.  Appellant argues in his next two points that the evidence was
“legally insufficient” and “factually insufficient” to support the
conviction.  Finally, appellant argues
that the trial court erred in amending the indictment to show the complainant’s
name as “Donald Dean” instead of “Dean Donald.”

 








                                       Appellant’s
Claim of “Fundamental Error” in Charge

Appellant
cites Posey v. State, 916 S.W.2d 88 (Tex.App. - Houston [1st Dist.] 1996), rev’d,
966 S.W.2d 57 (Tex.Cr.App.1998), arguing that the court of appeals was correct
when it held that it was “fundamental error” for the trial court not to
instruct the jury on the defensive issue of mistake of fact when that defense
was raised by the evidence.  In his
brief, appellant concedes that the court of appeals was reversed and then asks
for reconsideration of this issue.  Our
court is obligated to follow the holdings of the Court of Criminal Appeals, and
that court held that TEX. CODE CRIM. PRO. ANN. art. 36.14 (Vernon Supp. 2003)
does not require trial courts to instruct the jury on “unrequested
defenses.”  See Posey v. State, 966
S.W.2d at 60-62:

Therefore,
the question boils down to whether Article 36.14 imposes a duty on trial courts
to sua sponte instruct the jury
on defensive issues, or whether Article 36.14 permits a defendant to complain
for the first time on appeal about the omission of unrequested defensive issues
in the charge.

 

                                                           *    *   
*

 

Article
36.14 also mandates that a trial court submit a charge setting forth the law
“applicable to the case.”  The question
in this case is whether this imposes a duty on trial courts to sua sponte instruct the jury on
unrequested defensive issues.  We hold
Article 36.14 imposes no such duty.  

 

Point of Error No. 1 is
overruled.

                                                              Assistance
of Counsel

In
discussing a defendant’s right to the assistance of counsel under U.S. CONST.
amend. VI and TEX. CONST. art. I, § 10, the court said in Hernandez v. State,
726 S.W.2d 53, 57 (Tex.Cr.App.1986), that Texas “will follow in full” the
standards which were established in Strickland v. Washington, 466 U.S. 668
(1984), “for determining ineffectiveness of counsel and for ascertaining when
such ineffectiveness is prejudicial.” 
The court quoted Strickland v. Washington, supra, in Hernandez v. State,
supra at 55:








[T]he proper standard for attorney
performance is that of reasonably effective assistance....When a
convicted defendant complains of the ineffectiveness of counsel’s assistance,
the defendant must show that counsel’s representation fell below an objective
standard of reasonableness....A convicted defendant making a claim of
ineffective assistance must identify the acts or omissions of counsel that are
alleged not to have been the result of reasonable professional judgment.  The court must then determine whether, in
light of all the circumstances, the identified acts or omissions were outside
the wide range of professionally competent assistance....The court should
recognize that counsel is strongly presumed to have rendered adequate
assistance and made all significant decisions in the exercise of reasonable
professional judgment.

 

                                                           *    *   
*

 

The defendant must [also] show that there is
a reasonable probability that, but for counsel’s unprofessional errors, the
result of the proceeding would have been different.  (Emphasis added)

 

TEX. PENAL
CODE ANN. § 8.02 (Vernon 2003) (“Mistake of Fact”) provides that it is a
defense to prosecution if the defendant “through mistake formed a reasonable
belief about a matter of fact” if his mistaken belief negated the
culpability required for commission of the offense. (Emphasis added)

Appellant’s
trial counsel developed this defensive issue in his cross-examination of the
State’s two witnesses and also by putting appellant and two other witnesses on
the stand to support his defense that he did not know that the vehicle had been
stolen.  Then, appellant’s trial counsel
made this argument to the jury:

Ladies and gentlemen of the jury, I want to thank
you for the time you’ve spent on this case.

 

                                                           *    *   
*

 

The whole case hinges on should he have known
the car was stolen.

 

                                                           *    *   
*

 

Okay.  We know that everybody in the neighborhood
drives around with broken steering columns. 
The grandmother told you that. 
The other young man told you that....It’s just the way [those] people do
things, you know.  You get it fixed;
they’re going to break it again.  So
that’s just the way it goes.  Who is to
say that’s so unreasonable?

 








Have you heard anything
to the contrary?  No, you haven’t heard
anything to the contrary.  That’s a
neighborhood where everybody seems to work on cars and do their thing and
jury-rig cars. 

 

                                                           *    *   
*

 

See, we’re talking about
a truck here that was...all beat up, torn up and full of junk....So we don’t
know.  But we do know that the State
has not proved to you anything except that he was driving a car with a busted
steering column.  They haven’t proved he
stole the car.

 

                                                           *    *   
*

 

I said [to the police
officer who arrested appellant], well, how can you say that [appellant stole
the car]?  All you can say, you caught
him driving a car with a busted steering column.  He said, yeah, I guess you’re right; that’s all I can say.

 

                                                           *    *   
*

 

Now, I’ve said just about
all I can say about this case....All I want you to do is follow the Judge’s
charge.  And it says here he must know
that this vehicle was stolen [and] you will come to the conclusion that at
best the State can prove that he was driving a car with a broken steering
column.

 

                                                           *    *   
*

 

But justice, honesty, truth, humanity
deserves that you tell the State that you have not proved your case....So
ladies and gentlemen, please do your job and do it well.  Thank you very much. (Emphasis added)

 

           
Appellant has not shown that “there is a reasonable probability” that he
would not have been convicted if his trial counsel had objected to the charge
and requested an instruction to the jury on the defensive issue of mistake of
fact.  Strickland v. Washington, supra;
Hernandez v. State, supra.  Point of
Error No. 2 is overruled.  

                                                        The
Evidence








Donald
Dean testified that he was a truck driver who lived in Dallas and that he owned
the 1988 Silverado pickup which appellant was driving at the time of his arrest
on August 4, 2000.  Dean testified that
he bought the pickup about 5 years earlier for $12,000, that it was in “very
good” condition when he bought it, and that it was still in good condition when
it was stolen.  Dean discovered that the
pickup was missing when he went out to get the paper on the morning of July 19,
2000; and he called the police to report the theft.  Dean testified that he had not given anybody his consent to take
the vehicle and that he had not sold it to anyone. About three weeks later, the
police told him that his vehicle was in the “pound,” and he took his
registration and insurance papers to get his vehicle from the pound.  Dean said that his pickup was in “very bad”
condition when he got it from the pound, that the steering column was broken,
that the seats were torn and ripped, that the glove compartment was missing,
that the windshield was cracked, that the rearview mirror was missing, and that
the left side door lock was knocked all the way in.   Dean also said that the transmission was burned up and had to be
replaced.  Dean said that he was still
the owner of the vehicle, that it cost him $310 to get it from the pound, that
the repairs which had been done cost about $1,600, and that he had not had the
money to get everything repaired.  

Dean
admitted that he was currently on probation and that he had been convicted for
the unauthorized use of a vehicle, for an assault, and for various
misdemeanors.  Dean also said that
appellant had called him, asking him to “please drop the charges” and offering
to see to it that the truck was repaired. 
Dean said that appellant “claimed” that he had bought the pickup from
one of his friends but that appellant would not give the name of his
friend.  Dean said that appellant
claimed that he had paid $800 for the vehicle, and Dean estimated that the
value of the vehicle at that time was about $7,500.  Dean also testified that he thought appellant stole the pickup
because he “was caught in the pickup.”  








Officer
Justin White of the DeSoto Police Department testified that he was “conducting
stationary radar” on August 4, 2000. 
Officer White was also “running registrations” on the on-board computer;
and, when he ran the license on appellant’s vehicle, he got information from
the computer that the vehicle had been reported stolen.  Officer White stopped the vehicle, and he
gave Miranda warnings[3]
to the three people who were in the vehicle. 
Officer White identified appellant as the driver of the vehicle.  Officer White said that appellant claimed
that he had “bought the vehicle for $300 from a guy by the name of James.”  Officer White said that appellant did not
have a title to the vehicle and that the “key lock” on the driver’s side “had
been punched in and...was missing.” 
Officer White also said that the steering column had been “popped” and
that the vehicle was “running without the keys.”  Officer White arrested appellant and released the other two
people.  The vehicle was impounded.  During his cross-examination, Officer White
said that the only evidence he had that appellant had stolen the vehicle was
that he was in possession of it and operating it.  Officer White also agreed with appellant’s attorney that one of
the passengers told Officer White that appellant had paid $300 down and that he
was to pay $1,500 later on.  During his
redirect examination, Officer White testified that appellant claimed that he
had bought the car “about two months prior” to his arrest and that the
passenger said the car was bought “about a week prior” to the arrest.  Officer White said that he did not get
consistent stories from appellant and the passenger about the “buying” of the
car.

After the
State rested, appellant’s grandmother testified that she was in the yard
working on her car in August of 2000 when a truck drove up with three men in
it.  She knew one of the men.  His name was Cox, and he asked her if she
wanted to buy the truck.  She said that
appellant was not in the truck and that the men drove off.  

Marcus Cox
testified that he lived in Oak Cliff and that he had been convicted for selling
drugs.  Cox testified that he was with
two men when they brought a truck to appellant and that appellant bought the
truck for $300.  Cox said that one of
the men was a “dude” named James and that the other one was named Phil.  Cox said that appellant had the truck about
two weeks before he was stopped and arrested. 
Cox also said that the steering column was broken and that the keyhole
was punched out on the driver’s side. 
Even so, Cox said that he did not think the vehicle was stolen.  Cox said that he had a car “with the collar
broke” and that it was not stolen.  Cox
said that he brought two guys to sell the pickup to appellant “with no
title.”  Cox said that they were
supposed to give appellant the title later. 









Appellant
testified that he did not steal Dean’s truck and that he bought it from a
friend.  Appellant also testified that
his car had been stolen three or four times and that he does not “even bother
with trying to fix the column anymore.” 
Appellant said that he just goes ahead and drives it.  Appellant said that, once the car thieves
see that the steering column is broken, they do not want to bother with
it.  Appellant’s testimony on direct
examination reads in part as shown:

Q: Tell us
what happened and how...you came up with the truck.

 

A:
Okay.  My wife and myself, we was at
home.  We were laying in the bed.  My friend Marcus Cox came up with James, and
he said...I have James right here.  He
wants to sell his truck.  

 

                                                           *    *   
*

 

And I was
like, well, I already looked at the truck. 
The steering column is broke on it, you know.  And I said, now, I know Cox and I know James.  I really don’t trust James.  I really don’t want to purchase this
truck.  You know what I’m saying?  Because he’s willing to take anything right
now at this point.  So I could see that
he really just basically wanted some money. 

 

                                                           *    *   
*

 

Because
he...said, man, you know, I really want fifteen hundred for the truck....And I
was like, well, I ain’t got no fifteen hundred dollars.  I got $300, you know, whatever, down payment
on the truck.

 

                                                           *    *   
*

 

And at
that point, I...asked him, I said, now, you need to let me know what is going
on with this truck because it does have a busted steering column.  I know you. 
You know what I’m saying?  I know
Cox.  Cox is not into things like
that.  He doesn’t do anything like
that.  He’s trying to go on and be straight,
because he was on parole.

 

Q: But you
are suspicious when you see a column - - steering column broken and a door
punched out like that, right?  You are
suspicious?

 

A: That’s
right.

 

Q: So why
did you buy this thing if you’re suspicious?

 

A: Because
I got two friends here, and I know - - because Cox was riding around in the
truck.  This was Cox’s friend.  And I was, like, Cox ain’t going to be
riding around in no stolen truck and he’s on parole.  That would be stupid, you know. 
And I was, like, no.








So Cox was like, well,
man, we been riding around and we ain’t had no problem....And I was, like,
there can’t be nothing wrong with this truck, you know.

 

And I’m being
truthful.  So I weighed the
situation.  And I said here I have two
friends who are guaranteeing that this truck is legitimate.  So I said okay.  My wife said do it.  I
said okay.  I’m willing to give it a
try.  And that’s what happened.

 

           
Appellant also testified that he had tried to find his ex-wife and James
to get them to testify for him but that Cox was the only one he could find to
support his testimony.  Appellant also
testified that he had never been to the penitentiary and had never been on
probation.  During his
cross-examination, appellant said that he was not willing to give James “$1,500
off the top when he didn’t have no title or nothing.”  Appellant also said that he “gave him $300 that day” and that he
did not drive the vehicle until the day he was arrested.  Appellant also said that he did not tell the
police officer that he bought the car two months prior to the day of his
arrest. 

                                              Sufficiency
of the Evidence

We have
reviewed appellant’s claim that the evidence was “legally” insufficient under
the test stated in Jackson v. Virginia, 443 U.S. 307 (1979); and we have reviewed
his claim that the evidence was “factually” insufficient to support his
conviction pursuant to Vasquez v. State, 67 S.W.3d 229, 236
(Tex.Cr.App.2002).  The jury was the
“exclusive judge of the credibility of the witnesses,” and the reconciliation of
conflicts in the testimony was within the “exclusive province of the
jury.”  Jones v. State, 944 S.W.2d 642,
647 (Tex.Cr.App.1996), cert. den’d, 522 U.S. 832 (1997).  We have reviewed all of the evidence, and we
hold that it was both “legally” sufficient and “factually” sufficient to
support the jury finding that appellant was guilty of the offense; the
conviction was neither “clearly wrong” nor “manifestly unjust.” Jackson v.
Virginia, supra; Vasquez v. State, supra; Jones v. State, supra.  Points of Error Nos. 3 and 4 are overruled.

                                               Amendment
of Indictment








The
indictment which was filed on August 15, 2000, alleged that appellant operated
a vehicle “without the effective consent of Dean Donald, the owner
thereof.”  The State’s “Motion to Amend
Indictment” was granted on May 17, 2002. 
The indictment was amended by deleting the words “Dean Donald” and
replacing them with the words “Donald Dean.” 
The changes are shown on the face of the indictment, and the amended
indictment was initialed and dated by the district judge.  The trial began on June 4, 2002. The
amendment of the indictment was proper. 
See TEX. CODE CRIM. PRO. ANN. arts. 28.10 & 28.11 (Vernon 1989).  Point of Error No. 5 is overruled. 

                                                                This
Court’s Ruling

The
judgment of the trial court is affirmed.         

 

BOB
DICKENSON

SENIOR
JUSTICE

 

June 26, 2003

Do not publish.  See TEX.R.APP.P. 47.2(b). 

Panel consists of: Arnot, C.J., and 

Wright, J., and Dickenson, S.J.[4]











[1]TEX. PENAL CODE ANN. § 31.07 (Vernon 2003) defines the
offense and provides that it is a state jail felony.  TEX. PENAL CODE ANN. § 12.35 (Vernon 2003) provides that a person
convicted of a state jail felony shall be punished by confinement for not more
than 2 years nor less than 180 days.  A
fine of not more than $10,000 is also authorized.





[2]One of the conditions of community supervision was that
appellant pay $1,600 in restitution of damages to the vehicle.





[3]See Miranda v. Arizona, 384 U.S. 436 (1966).





[4]Bob Dickenson, Retired Justice, Court of Appeals, 11th
District of Texas at Eastland sitting by assignment.