# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00289-CR

**Dennis Davis, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT
NO. 13297, HONORABLE CHRISTOPHER DARROW DUGGAN, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury found appellant Dennis Davis guilty of family violence assault and assessed his punishment, enhanced by a previous felony conviction, at twenty years' imprisonment and a $10,000 fine. *See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(2)(A) (West Supp. 2009). Appellant contends that the trial court erred by failing to instruct the jury on self-defense, and that his trial counsel was ineffective for having failed to request such an instruction. We overrule these contentions and affirm the conviction.

On March 13, 2008, appellant was engaged to the complainant, Angela Reynolds, and living with her and two of her children in an Elgin apartment. That night, Reynolds and appellant went to a restaurant and then to a nightclub before returning home shortly before midnight. Both had been drinking. Reynolds testified that she was preparing to go to sleep when appellant "came storming back into the bedroom" and demanded to see her cell phone. Appellant seized Reynolds's

phone and began to look for a number. When Reynolds told appellant that she had deleted the number from the phone and tried to explain why she had done so, he threw the phone against the wall and broke it. This made Reynolds "very angry." She testified, "I started cursing him, and smacked him on the side of the arm and said, 'Why did you do that?'" She continued, "It's hard to say what exactly happened next. I know that we started smacking back at each other, back and forth. Somehow he swatted at me in the face hard enough to cause my nose to bleed." Reynolds said that she "ended up down on the floor." Appellant "had one hand behind my neck back here and the other one with my hair like this. And I had my fingers into his—latched onto his face, and planted my feet against his chest to try to get him off me." Reynolds testified that she was afraid that appellant "would try to choke me."

Reynolds called out to a friend, Edward Gibson, who was staying at the apartment. "I was screaming to him to come help, to call the police." Gibson came to the bedroom from the living room, where he had been sleeping on the couch. When appellant saw Gibson, he "jumped off of [Reynolds], and chased [Gibson] out of the apartment." Reynolds took this opportunity to call 911. As she spoke to the operator, appellant reentered the apartment, went to the bedroom, and got dressed. Reynolds testified that appellant then "ran towards me, took a kick at me," and "ran out the door because he knew the police were coming."

Elgin police officer Hoffman Jimenez was dispatched to Reynolds's apartment at 12:20 a.m. He testified that Reynolds had a bloody nose and marks on her face and neck. Jimenez described Reynolds as "very frightened." She was "shaking" and "very nervous." According to Jimenez, Reynolds "appeared as somebody that had been abused, basically." Jimenez said that the bedroom "was in disarray." He saw blood on the sheets and bedspread, and on the wall and door.

2

Eleven photographs identified by Jimenez and introduced in evidence showed the injuries to Reynolds and the condition of the bedroom.

Appellant returned to the apartment shortly before 2:00 a.m., after Jimenez had left. He knocked on the apartment door and asked Reynolds to let him in. She called the police instead, and Jimenez was again dispatched. Jimenez testified that when he arrived at the apartment the second time, appellant was sitting on the front porch and drinking a beer. Jimenez ordered appellant to stand and walk toward the light. According to Jimenez, appellant "became aggressive. I don't remember exactly what he said, but I do remember he became aggressive." By this time, a backup officer had arrived at the scene. Jimenez took his duty weapon from its holster and held it at his side, then ordered appellant to "get on the ground." Appellant complied with this order and was arrested. Jimenez testified that appellant had no visible injuries at the time he was booked into jail, and this testimony was corroborated by a photograph of appellant taken at that time.

Appellant's first contention is that the trial court erred by failing to instruct the jury on the law of self-defense. Appellant concedes that he did not ask for such an instruction, but he urges that the trial court should have given a self-defense charge on its own motion because the evidence "overwhelmingly demonstrates" that Reynolds was the initial aggressor.

A trial court is not required to instruct a jury on traditional defenses and defensive theories absent a defendant's request. *Oursbourn v. State*, 259 S.W.3d 159, 179 (Tex. Crim. App. 2008) (citing *Delgado v. State*, 235 S.W.3d 244, 249-250 (Tex. Crim. App. 2007) and *Posey v. State*, 966 S.W.2d 57, 62-63 (Tex. Crim. App. 1998)). Appellant cites no pertinent authority in support of his contention, which is directly contrary to the holding in *Oursbourn* and the opinions it cites.

Absent a request by appellant, self-defense was not law applicable to this case and no instruction was required. Issue one is overruled.

Anticipating the overruling of his charge issue, appellant further contends that his trial counsel was ineffective for having failed to request a self-defense instruction. Appellant must show that his attorney's failure to request the instruction was such a serious error that counsel was not functioning effectively, and that the error prejudiced appellant's defense to such a degree that he was deprived of a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 771-72 (Tex. Crim. App. 1999). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

Whether or not to request a defensive instruction is a matter of trial strategy and tactics. *Delgado*, 235 S.W.3d at 249; *Posey*, 966 S.W.2d at 63. Because this issue is being raised for the first time on appeal, there is no record as to trial counsel's reasons for not requesting a self-defense charge. Appellant must show that there could be no reasonable justification for that decision. *See Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005).

Reynolds testified that after appellant broke her cell phone, she cursed him and "smacked him on the side of the arm." This testimony supports appellant's assertion that Reynolds struck the first blow and was, at least physically, the initial aggressor. But even if this evidence raised the issue of self-defense, trial counsel could have reasonably concluded that the jury was unlikely to believe that it was "immediately necessary" for appellant to inflict the injuries shown by

the evidence in order to protect himself from Reynolds's "smack" on the arm.[1] *See* Tex. Penal Code Ann. § 9.31(a) (West Supp. 2009). Counsel also could have reasonably concluded that the jury was likely to consider appellant's destruction of Reynolds's cell phone as having provoked her initial use of force, such as it was. *See id*. § 9.31(b)(4). In short, counsel could have reasonably decided that it would damage his credibility with the jury to argue a defensive theory that was so weak on its face. *See Posey*, 966 S.W.2d at 63 ("lawyer and the client could decide not to request the defensive issue and risk losing their credibility with the jury because the evidence raising the defense is so unworthy of belief"). Finally, counsel could have reasonably concluded that in the likely event that appellant was convicted, having claimed that he acted in self-defense would prejudice him at the punishment stage when the jury learned of his previous convictions for domestic assault and violating protective orders. On this record, appellant has not shown that his trial counsel was ineffective because he did not request a self-defense instruction. Issue two is overruled.

The judgment of conviction is affirmed.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed

Filed: February 2, 2010

Do Not Publish

---

[1] Penitentiary records introduced in evidence at the punishment stage reflect that appellant is six feet tall and weighs 245 pounds. From her photographs, Reynolds appears to be a woman of average size.