

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00482-CR

Douglas J. **BRUMLEY**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 52nd Judicial District Court, Coryell County, Texas
Trial Court No. FAM-13-21556
Honorable Trent D. Farrell, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:         Catherine Stone, Chief Justice
                 Marialyn Barnard, Justice
                 Luz Elena D. Chapa, Justice

Delivered and Filed:  August 13, 2014

AFFIRMED

Douglas J. Brumley ("Brumley") was involved in a physical altercation with his mother, Gail Brumley, and his father, Douglas B. Brumley. A jury convicted Brumley of family-violence assault for causing bodily injury to Gail, assessing his punishment at eighteen years' imprisonment and a $10,000 fine. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2) (West Supp. 2013). In his sole appellate issue, Brumley contends his trial counsel was ineffective because he did not request a jury instruction on the law of self-defense. We affirm the trial court's judgment.

**BACKGROUND**

In December 2012, Gail made a 9-1-1 call to the Coryell County Sheriff's Office and reported that Brumley was drunk and "acting crazy." She stated she was unable to deal with him because she was under hospice care. She further reported that he was acting violent, that "he done bruised up my arm," and that "he grabbed me and I got blood on my hand, blood on my arm." Douglas also spoke to the 9-1-1 operator and reported that Brumley was "shoving" Gail around and that Gail "was too weak to deal with this." They both indicated that this was not the first time Brumley became violent when drinking.

A sheriff's deputy was dispatched to Gail's residence in South Mountain, Texas. He testified that when he arrived, Gail—whom he described as a "frail, older . . . female"—was standing in front of the residence. She showed the deputy her right arm, which had blood on it, and said that Brumley had caused the injury but that he had run out the back door. Photographs from that night show a large, dark bruise and a small open wound on Gail's right arm.

After he made sure Brumley had left, the deputy interviewed Gail and Douglas. Gail told the deputy that her son had been drinking and became abusive and argumentative. She said that Brumley pushed her, causing her to fall on her hospital bed. The deputy testified Douglas's account of the night's event was consistent with Gail's. He also testified that neither Gail nor Douglas indicated that Gail initiated the contact with Brumley. Gail and Douglas both told the deputy they did not want criminal charges filed.

The deputy decided to file charges and left Gail's residence so that he could prepare the charges at the sheriff's office. After the deputy left, Gail made another 9-1-1 call because Brumley had returned. She reported that he was back and he had "gone crazy again." When the 9-1-1 operator asked "has he hit you," Gail replied "yes he bruised me up." The deputy returned to the residence and arrested Brumley.

At trial, Gail testified that the reason she called 9-1-1 was because Brumley was "getting too mouthy" and speaking negatively about her family. In response to his comments, she "got up" and "punched [Brumley] in the nose a couple of times." Brumley then took her arm to help her back to bed because she was about to lose her balance. Gail also testified that she bruised easily. Gail did not recall telling the 9-1-1 operator that Brumley had hurt her.

Douglas testified Gail called 9-1-1 because Brumley was drunk and speaking poorly of her family, causing her to "hit" Brumley on the nose three times. He testified that Brumley caught Gail's arm when she was about to swing for the fourth time and that her legs got caught on the bed. Brumley then helped Gail sit down. Douglas testified that the only "shoving" that occurred that night was when he attacked and wrestled with Brumley for speaking negatively about Gail's family.

## DISCUSSION

Brumley contends his trial counsel was ineffective because he did not request the trial court to instruct the jury on self-defense.

To show that his counsel's representation was so inadequate as to violate the Sixth Amendment right to counsel, Brumley must prove by a preponderance of the evidence that 1) his counsel's performance was deficient, and 2) his deficient performance prejudiced his defense. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). "The assessment of whether a defendant received effective assistance of counsel must be made according to the facts of each case." *Id.* at 813. "An appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel." *Id.* "Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.*

The Court of Criminal Appeals has recognized that the defendant and his trial counsel may strategically choose not to request instructions on defensive issues. *See Delgado v. State*, 235 S.W.3d 244, 254 (Tex. Crim. App. 2007) (holding trial court had no *sua sponte* duty to instruct the jury on the State's burden of proof for extraneous offenses); *Posey v. State*, 966 S.W.2d 57, 63 (Tex. Crim. App. 1998) (holding trial court had no *sua sponte* duty to instruct jury on mistake-of-fact defense). In *Posey*, the Court reasoned that a decision by the defendant and his counsel not to request an instruction on the mistake-of-fact defense could have been based on their desire to "avoid losing their credibility with the jury because the evidence raising the defense is so unworthy of belief." 966 S.W.2d at 63.

The record does not contain any evidence about whether counsel made a strategic decision to not request a self-defense instruction. Brumley's attack on his counsel's performance, based on an alleged error of omission, is particularly ill-suited to evaluation on direct appeal without a record developed on a motion for new trial. *See Thompson*, 9 S.W.3d at 814. Because we are obligated to accord his counsel a strong degree of deference, we may sustain Brumley's ineffectiveness claim only if we conclude that absolutely no reasonable strategy could justify a decision to not request a self-defense instruction.

Brumley contends that *Vasquez v. State* supports such a determination. *See* 830 S.W.2d 948 (Tex. Crim. App. 1992) (per curiam). In *Vasquez*, the appellant was convicted of unlawful possession of a firearm by a felon. *Id.* at 949. On direct appeal, the appellant argued his counsel was ineffective for failing to request an instruction on the justification of necessity as a defense to the crime. *Id.* The appellant had testified at trial that he was a target of ex-members of prison gangs, that he had been attacked and kidnapped by a group of them at the time of his offense, and that he escaped from his kidnappers by grabbing a gun from an inattentive kidnapper. *Id.* at 950. He was then apprehended when he walked into a convenience store with the gun. *Id.*

The Court of Criminal Appeals found that the facts of the case raised the defense of necessity and that appellant's counsel was ineffective for not failing to request the instruction. *Id.* at 951. The Court reasoned that "[c]ounsel should have recognized that appellant's testimony was sufficient to raise the defense, and that appellant had nothing to lose by requesting a defensive instruction." *Id.* Furthermore, appellant's conviction was a foregone conclusion without an instruction on necessity. *Id.*

Brumley's case is distinguishable because it is arguable that Brumley did have something to lose by asserting self-defense at trial. The evidence showed that Gail was a small, frail woman who was under hospice care. Brumley's offense report shows that he was a 35-year-old male, stood at 5′ 10″ tall, and weighed 170 pounds. Given the significant disparity in health and stature between Brumley and Gail, a reasonably competent lawyer could conclude that the jurors would find an argument that Brumley acted in self-defense implausible, causing them to be more inclined to convict Brumley and sentence him to a harsher punishment. *See Posey*, 966 S.W.2d at 63. And without a record reflecting the reasons behind counsel's actions at trial, we have no way of knowing whether this strategic concern, or any other one, motivated Brumley's counsel to not seek an instruction on self-defense.

Because the record does not affirmatively show that Brumley's counsel was constitutionally ineffective for not requesting a jury instruction on self-defense, we overrule Brumley's sole point of error and affirm the trial court's judgment.

Luz Elena D. Chapa, Justice

Do Not Publish