**Affirmed and Opinion Filed May 29, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00286-CR

**TOMMY RAY KING, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 265th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1255339-R**

# MEMORANDUM OPINION

Before Justices Bridges, Brown, and Nowell
Opinion by Justice Nowell

A jury convicted Tommy Ray King of aggravated robbery and the trial court assessed punishment at fifty years in prison. In three issues, appellant complains about the sufficiency of the evidence identifying him as the perpetrator of the offense, the denial of his request for a jury instruction regarding his explanation for possession of recently stolen property, and the denial of his common law right of allocution. We affirm.

## BACKGROUND

The complainant, seventeen-year-old L.K., was walking to a bus stop on her way to school when she heard heavy breathing behind her. Then a man grabbed her from behind and dragged her behind a nearby dumpster. Her glasses fell from her face as he did so. L.K. was holding her iPhone and tried to call 911, but the man slammed her head into the concrete and took her phone.

He continued to beat her as she tried to escape. The man removed her clothes, strangled her, and stabbed her repeatedly on her chest, neck, and back. L.K. scratched the man's arms as she drifted in and out of consciousness. After stabbing her in the back, the man said, "[H]ave a nice life," then left with her phone and her tote bag.

L.K. tried to drag herself from behind the dumpster to get help. An employee from a nearby store saw her and called 911. Officer Michael Perry responded at 9:05 a.m. and called for an ambulance. He initially thought L.K. was dead because of the amount of blood on the ground and the multiple stab wounds on her body. He secured the area, knelt next to her and asked what happened. He was surprised she was able to respond. She told him, "[H]e grabbed me from Maple, raped and stabbed me." L.K. was able to describe the man as an "older white man, 50 to 60, with a grey beard."

Paramedics arrived and took L.K. to the hospital. She received a blood transfusion and a chest tube for a collapsed lung; she sustained a broken nose and twenty stab wounds during the attack. Police began searching for the perpetrator. Officer Susan Millard and Rex, her tracking dog, arrived at 10:23 a.m. and started their search at 10:33 a.m. Rex picked up a scent from the area near the dumpster and tracked the scent down the street toward a wooded area near a creek. A police helicopter radioed that a man was in the creek near a bridge ahead of them. Millard saw a man, later identified as King, matching the suspect's description washing himself in the creek. She identified herself and her cover officer took him into custody at 10:58 a.m.

King's boots, belt, and personal items inside the boots were found near the creek where he was washing himself. Inside the boots, Detective Steven Cleary found a folding pocket knife, two cellphones, including L.K.'s iPhone, and identification for King. After King's arrest, Detective Michael Kemp took the iPhone found in King's boot to L.K. in the hospital. She identified the phone as hers and unlocked it.

Detective Kemp testified that King's age and general physical appearance matched L.K.'s description of her attacker, as did his clothing found on or near him at the time of his arrest. Kemp also testified, however, that L.K. and another witness were unable to select King's picture from a photographic lineup. On cross-examination, Kemp confirmed that King made a spontaneous verbal statement "that it was his lucky day because 'a cell phone just flew over the edge and almost hit [him] in the head." No one had mentioned a smart phone to defendant before he made the statement.

DNA testing of a stain on King's shirt showed two contributors. Both L.K. and King were included as potential contributors to the sample with a statistical weight of one in thirty-three. The DNA profile obtained from the blade of the knife was also a mixture of two individuals. The major contributor matched the DNA profile of L.K. and the minor contributor matched the DNA profile of King. The statistical analysis for inclusion of L.K. as the major contributor to the sample on the knife blade was less than one in ten trillion. The statistical analysis for inclusion of King as the minor contributor to the sample on the knife blade was one in 1.43 billion.

## DISCUSSION

### A. Sufficiency

We review a challenge to the sufficiency of the evidence on a criminal offense for which the State has the burden of proof under the single sufficiency standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Acosta v. State*, 429 S.W.3d 621, 624–25 (Tex. Crim. App. 2014). Under this standard, the relevant question is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2011). This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Therefore, in

analyzing legal sufficiency, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Id.* When the record supports conflicting inferences, we presume the factfinder resolved the conflicts in favor of the verdict and therefore defer to that determination. *Id.* Direct and circumstantial evidence are treated equally: circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id.*

As applicable in this case, a person commits aggravated robbery if the person commits robbery and uses or exhibits a deadly weapon. TEX. PENAL CODE ANN. § 29.03(a)(2). A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another. *Id.* § 29.02(a)(1). A person commits theft if he unlawfully appropriates property with intent to deprive the owner of property; appropriation of property is unlawful if it is without the owner's effective consent. *Id.* § 31.03(a), (b)(1). "Bodily injury" means physical pain, illness, or any impairment of physical condition. *Id.* § 1.07(a)(8). "Deadly weapon" means a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. *Id.* § 1.07(a)(17).

The State may prove the defendant's identity and criminal culpability by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence. *Ingerson v. State*, 559 S.W.3d 501, 509 (Tex. Crim. App. 2009); *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009).

King contends the evidence is insufficient to identify him as the person who committed the crime. He argues that his mere presence in the general area where the crime occurred, when

viewed in conjunction with the evidence that neither L.K. nor the other witness were able to identify him in photographic lineups and his explanation for having L.K.'s cellphone, renders the evidence insufficient to prove he was the perpetrator of the offense.

L.K. gave only a general description of her assailant, but testimony from police and photographs of King after his arrest show he matched that description. L.K. testified she was able to scratch her attacker's arms during the attack and there was evidence King had recent scratches on his arms when arrested. Detective Kemp testified King's clothing matched L.K.'s description of a black t-shirt, pants, and boots. The jury heard evidence that L.K.'s DNA was found on a stain on King's shirt and on the blade of the knife found in his boot. King's DNA was also present on both items. L.K.'s iPhone was found in his boot. While King gave an explanation for possession of the iPhone, the jury could reasonably conclude that his possession of the knife and the iPhone were circumstances connecting him to the aggravated robbery. The juror could also reasonably conclude that King's explanation for possession of the iPhone was false or unreasonable based on the evidence that the person who stabbed her multiple times with a knife also took L.K.'s iPhone.

We conclude the jury's necessary inferences are reasonable based on the combined and cumulative force of all the evidence. Viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We overrule appellant's first issue.

### B. Jury Instruction

In his second issue, appellant argues the trial court abused its discretion by denying his request for a jury instruction regarding his explanation for being in possession of recently stolen property.

We review the jury charge for error before determining whether any error was harmful. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). We assess the degree of harm

–5–

based on whether the error was preserved. *Id.*; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

The trial court has a duty to instruct the jury on the law applicable to the case. TEX. CODE CRIM. PROC. ANN. art. 36.14; *Posey v. State*, 966 S.W.2d 57, 61–62 (Tex. Crim. App. 1998). This law requires the trial court to instruct the jury on statutory defenses, affirmative defenses, and justifications whenever they are raised by the evidence. *Walters v. State*, 247 S.W.3d 204, 208–09 (Tex. Crim. App. 2007); *see also* TEX. PENAL CODE ANN. §§ 2.03–.04.

However, if a jury-charge instruction "is not derived from the [penal] code, it is not 'applicable law'" under art. 36.14. *Kirsch v. State*, 357 S.W.3d 645, 651 (Tex. Crim. App. 2012) (quoting *Walters*, 247 S.W.3d at 214). If a defensive theory is not explicitly listed in the Penal Code, if it merely negates an element of the offense, rather than independently justifying the conduct, the trial court should not instruct the jury on the theory. *Walters*, 247 S.W.3d at 209; *Giesberg v. State*, 984 S.W.2d 245, 250 (Tex. Crim. App. 1998).

King relies on the evidence that he gave an explanation for his possession of L.K.'s iPhone to support his request for a jury instruction. Detective Kemp testified that shortly after his arrest, King volunteered that he was lucky because a "cell phone just flew over the edge and almost hit [him] in the head." King requested the following jury instruction:

> [Y]ou are instructed that under the law of applicable [sic] in this case you are instructed that the possession of the allegedly stolen property by the defendant at the time of his arrest cannot be considered or inferred to be any evidence of his guilt unless they find that the State of Texas has proven that his explanation was unreasonable and inconsistent with innocence or if reasonable and consistent, then disproved by the State.

The trial court denied the request.

King argues, citing cases predating the current Penal Code, that Texas common law requires an instruction to the jury when a defendant offers an explanation for his possession of

recently stolen property when first confronted about his possession.[1] More recent authority holds that a defendant is not entitled to a jury instruction regarding his explanation for his possession of recently stolen property. *See Sanders v. State*, 707 S.W.2d 78, 81 (Tex. Crim. App. 1986). The court held that if a defensive theory merely negates an element of the offense, no affirmative charge must be given. *Id.* at 81; *see also Walters*, 247 S.W.3d at 209 ("if the defensive theory is not explicitly listed in the penal code—if it merely negates an element in the State's case, rather than independently justifying or excusing the conduct—the trial judge should not instruct the jury on it").

The instruction requested in this case would serve merely to negate an element of the offense, and thus appellant was not entitled to the non-statutory defensive instruction he requested. Accordingly, the trial court did not err by denying his request. We overrule appellant's second issue.

## C. Allocution

In his final issue, appellant argues the trial court violated his common law right to allocution. Appellant does not dispute that the trial court followed the statutory allocution procedure in article 42.07. TEX. CODE CRIM. PROC. ANN. art. 42.07. He claims he was denied a broader common law right to allocution when the trial court pronounced sentence. We conclude the issue is not preserved for appeal.

As a prerequisite to presenting a complaint for appellate review, the record must show that the specific complaint was made to the trial court. *See* TEX. R. APP. P. 33.1(a). Any right of allocution must be preserved by making a timely and specific objection in the trial court and

---

[1] *Callahan v. State*, 502 S.W.2d 3, 7 (Tex. Crim. App. 1973); *Rodriguez v. State*, 119 S.W. 312 (Tex. Crim. App. 1909); *Scott v. State*, 36 S.W. 276, 277 (Tex. Crim. App. 1896); *Wheeler v. State*, 30 S.W. 913 (Tex. Crim. App. 1895); *Williamson v. State*, 17 S.W. 722 (Tex. Ct. App. 1891); *Moreno v. State*, 6 S.W. 299 (Tex. Ct. App. 1887); *Windham v. State*, 19 Tex. App. 413, 1885 WL 6928 (Tex. Ct. App. 1885).

obtaining a ruling. *McClintick v. State*, 508 S.W.2d 616, 618 (Tex. Crim. App. 1974) (op. on reh'g) (concluding appellant failed to preserve complaint trial court violated his right to "common law allocution" by failing to object in trial court prior to imposition of sentence).

Appellant did not object at trial on the ground he was denied a common law right of allocution and he raises this issue for the first time on appeal. He has failed to preserve error. *See Williams v. State*, 05-16-01305-CR, 2018 WL 1373953, at *4 (Tex. App.—Dallas Mar. 19, 2018, no pet.) (mem. op., not designated for publication). We overrule appellant's third issue.

## CONCLUSION

Having overruled appellant's issues, we affirm the trial court's judgment.

/Erin A. Nowell/
ERIN A. NOWELL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
180286F.U05

–8–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

TOMMY RAY KING, Appellant

No. 05-18-00286-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 265th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1255339-R.
Opinion delivered by Justice Nowell.
Justices Bridges and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 29th day of May, 2019.