**AFFIRMED as MODIFIED and Opinion Filed January 18, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-20-00912-CR

**AUSTON BRYCE ARMSTRONG, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 86th Judicial District Court**
**Kaufman County, Texas**
**Trial Court Cause No. 20-00259-86-F**

## MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Garcia
Opinion by Justice Molberg

A jury found appellant Auston Armstrong guilty of aggravated assault on a family member with a deadly weapon causing serious bodily injury, a first-degree felony, *see* TEX. PENAL CODE § 22.02(b)(1), and he was sentenced to twenty-five years' confinement. In this appeal, appellant contends he suffered egregious harm under *Almanza* from the jury charge's lack of instructions on the use of deadly force against the complainant under penal code § 9.32(a) and the presumption of reasonableness for the use of deadly force under § 9.32(b). Appellant also contends in a second issue, and the State agrees, that the judgment should be modified to

reflect the correct statute for the offense. Because we do not find charge error as alleged by appellant but do agree the judgment should be modified, we modify the judgment and otherwise affirm. *See* TEX. R. APP. P. 47.4.

## I.    Background

On August 28, 2020, appellant was indicted for intentionally, knowingly, and recklessly causing serious bodily injury to Tyler Armstrong by stabbing him in the upper body and arm, "and the defendant did then and there use or exhibit a deadly weapon, namely a knife and an object unknown to the Grand Jury, during the commission of the assault, and the complainant was a member of the defendant[']s family as described by Section 71.003 of the Texas Family Code."

At trial, the evidence showed that appellant became enraged on Christmas Eve at the end of the night. Troy and Kimberly Armstrong, and their two sons, appellant and Tyler, along with appellant's girlfriend Amanda, and Tyler's girlfriend Brittani, had dinner together that evening at Troy and Kimberly's house and afterwards played a drinking game. Troy testified that, while he was helping Kimberly clean up in the kitchen, he heard appellant's voice in the dining room getting louder "and the chair slid out[,]" and he decided to intervene to "deescalate" the situation. Troy testified appellant and Brittani "were kind of going back and forth a little bit." Troy approached the table and said, "Hey, if you can't handle your liquor, maybe y'all need to quit drinking." Appellant then punched Troy in the face with his fist. They scuffled and Troy got appellant in a headlock and "had him against the wall" before

–2–

Troy released appellant and left the room. Troy testified Tyler, Amanda, and Brittani "were all helping trying to get [appellant] under control." Eventually appellant calmed down, and appellant and Amanda agreed to stay next door at Tyler's house, with the goal of keeping appellant away from Troy. Amanda got Troy into her car and drove them down the road a mile or two to wait for appellant to load up his things to move to Tyler's house. When Kimberly told appellant that Amanda and Troy were in the car, appellant became angry again and "started saying he was going to kill the fat son of a bitch[, Troy.]"

Tyler testified after appellant had calmed down, appellant went out on the back porch, Tyler followed him, and appellant "started hollering that he hated [their] dad so much," saying, "I hate him so much. I hate him so much. I could just kill him." Eventually, appellant walked out of the house and "[took] off towards the end of the driveway," and Tyler testified he followed him, and "Brittani stepped over in front of [appellant]." Tyler testified he was worried appellant "was running to try to get back to [their] dad again." Tyler stated Brittani "stepped in front of [appellant] and she put her hands up and was kinda like waving them kinda back and forth, like, you know, kinda like, wait, wait, wait, it's okay. And then he got to her and when he pushed — [appellant] got to her and he pushed her and like I said, I was heading towards him and the last thing I remember seeing of Brittani was her being pushed out to my right and I just remember her hair kinda flew up to the side as she was

–3–

falling . . . ." Tyler then got to appellant and did not remember much "other than [that he] got [appellant] in" a choke hold or a headlock again because, he said,

> I was protecting everybody involved because like I mentioned, [appellant] was already heading towards [Brittani] – or towards the end of the driveway, I assumed towards my dad, and then he pushed Brittani and so it was -- I was just trying to protect everybody that night, I guess.

Tyler said he did not feel himself get stabbed, but felt the blood on his chest and asked appellant, "Did you fucking stab me?" Tyler testified appellant told him he "needed to stay out of his way." Tyler did not "remember a whole lot after that" other than thinking this was how he was going to die, and then he woke up in the hospital. The doctor told Tyler he had been stabbed in the heart—a finger's length deep cut—as well as his left arm.

Kimberly went looking for Troy and Amanda, turned around, and saw appellant "shove Brittani and Brittani went to the ground and then [appellant] and Tyler started fighting." Kimberly testified Brittani was on the ground, breathing, but apparently unconscious. Kimberly testified she then heard Tyler say, "Bro, did you just stab me? You just stabbed me in the heart." Appellant ran inside, and Kimberly called 911 and attempted to stop the bleeding from Tyler's stab wound.

Appellant testified he could not think of any argument he had with Brittani at the table after dinner, but he said they were all being loud. He said Troy was aggravated when he reentered the dining room and said, "If you can't handle your damn liquor, maybe you don't need to be drinking." Appellant said Troy, who he

described as "pissed," then grabbed him by the shoulder and spun him around, and appellant "made the decision to hit him" because he "didn't know what [Troy] was going to do" given past threats, and appellant punched Troy in the face. Troy got appellant pinned against the wall before the fight was broken up by the others. Appellant said, later, he saw Amanda's car pass and he headed down the driveway "to try to stop her before she got out of view" because he wanted to leave with her. As he was running, he said, "Brittani stepped out in front of me and I — I just kinda brushed her off to the side . . . not trying to push her, not trying to hurt her or anything." Appellant testified he did not see Brittani fall to the ground. Tyler then "came up and kinda swung at me." Appellant said Tyler was mad because appellant had pushed Brittani: "he called me an SOB and told me I wasn't going to . . . push Brittani like that." Appellant said Tyler "wrapped me up and . . . had me in a choke hold and then took me immediately to the ground." Appellant testified he was trying to get up, he was on his back, and could not breathe; he told Tyler, "I can't breathe. You gotta let me breathe." But, appellant said, "he just kept tighter and tighter to the point where he couldn't get any tighter[.]" Appellant testified Tyler was choking him from behind. Appellant said he "wanted to be able to breathe before I passed out," so he got his folding knife out, opened it, and stabbed Tyler in the arm and chest. Appellant testified he was not trying to hurt his brother, but was trying to get him to let go of his neck. After Tyler told appellant he had "stabbed him in the heart," appellant panicked and went "into complete shock."

Neighbors came to Kimberly's assistance when they heard her screaming, and they restrained appellant at gun point until the police arrived. The deputy who assisted Brittani described her as "already blue in the face" when he arrived. Tyler was taken to the hospital by Care Flight, and Brittani was also taken to the hospital. While at the hospital looking for Tyler's room, Kimberly answered a phone call from Brittani's sister, who told her that Brittani had died.

*Jury charge conference*

After the close of evidence, at the conference on the jury charge, appellant's trial counsel objected to "the last sentence of paragraph [four]" of a draft charge that does not appear in the record before us. According to defense counsel, the sentence began, "The actor believes the force was immediately necessary and presumed to be reasonable if . . . ."[1] Counsel stated the "entire sentence should not be in the charge because it is not known with the facts in this case, according to how courts have interpreted that provision of self-defense to apply." The State responded that the charge tracked the pertinent statute. Counsel for appellant responded, in part, saying, "The point of provocation is that the person who allegedly does the provoking has to intend to provoke a response that will allow him then to use deadly force," and "[a]s far as the language about 'was not otherwise engaged in criminal activity,'

---

[1] It appears appellant's complaint was with an instruction based on penal code § 9.31(a)(2), which states, "The actor's belief that the force was immediately necessary as described by this subsection is presumed to be reasonable if the actor[,]" among other things, "did not provoke the person against whom the force was used[.]" TEX. PENAL CODE § 9.31(a)(2).

–6–

well, at the time that his arm's around his neck, he's not engaged in anything other than trying to breathe" and any crimes are no longer being committed. Counsel for appellant shortly afterwards stated, "[W]e don't dispute that it's an accurate statement of law and that it's in the Code and the pattern jury charge, but we're already cherry picking what we're taking out of, you know, the full self-defense charge to fit the facts of this case." The trial court then asked,

So what -- you just want this completely taken out?

[Defense Counsel 1]: Yes, Your Honor. So the way it would read –

[Trial Court]: I get it. Just taking it out of there.

[Defense Counsel 1]: Right. The sentence that starts with "the actor's belief."

[Trial Court]: I mean, I've got a whole – a whole, you know, application paragraph simply for provocation that's here in my pattern jury charge. Have y'all seen that?

[Defense Counsel 2]: Next page.

[Trial Court]: That's in the next page?

[Defense Counsel 1]: I think -- is that not just talking about the presumption of self-defense?

[Trial Court]: Yeah. I don't see --

[Defense Counsel 1]: I don't think that's talking about provocation.

[Defense Counsel 2]: The bottom paragraph is.

[Prosecutor]: The bottom is the application.

[Defense Counsel 2]: So if you cut that out, we've got to cut out bits of that application paragraph.

[Defense Counsel 1]: Oh, I see. I see.

[Trial Court]: Off the record.

After a recess, the court asked whether both sides had been given an opportunity to read the proposed charge—they had—and whether there were any further objections—there were not.  But shortly afterwards, the State raised the possibility that the charge as then constituted could be confusing to the jury:

> Under one, it says "the actor would be justified using" -- would be justified under Section 9.31[, ]9.32. The charge does not describe 9.31 or 9.32, but it's instructed on it because it's the beginning of that.
>
> [Trial Court]: Do we want to just take out that language?
>
> [Prosecutor]: Self-defense. We could put --
>
> [Trial Court]: And not put actual statutory language.
>
> [Prosecutor]: 31 or 32 of that.
>
> [Defense Counsel 1]: So you're saying instead of saying it would be justified under 9.31 or 9.32, would be justified as self-defense.
>
> [Prosecutor]: Under self-defense.
>
> [Defense Counsel 1]: Under self-defense. What about if we just took out the language entirely? "Another would be justified in using force or deadly force."
>
> [Prosecutor]: Under -- you have to have something though because you have to have -- otherwise, you have to actually put in the definitions, 9.31, what that is, 9.32, what that is.
>
> [Trial Court]: He's saying --
>
> [Prosecutor]: I mean, you've said it at the beginning of four, self-defense. So that's why I'm saying the charge, to read smoothly, I think you would say self-defense.
>
> [Trial Court]: He's saying just don't even say anything at all. "Would be justified in using force or deadly force." Just don't say anything.

[Defense Counsel 1]: Because we know we're talking about self-defense. The whole thing is about self-defense.

[Prosecutor]: Yeah, we can take that out.

Appellant then pointed out a misspelling, which the trial court corrected. The court asked the parties if there were any objections to the charge, and there were none. No further changes, requests, or objections were made to the jury charge.

*Jury charge*

On the question of self-defense, the finalized charge instructed the jury as follows:

Upon the law of self-defense, you are instructed that a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other person's use or attempted use of unlawful force.

A person is justified in using force or deadly force against another to protect a third person if:
(1) Under the circumstances as the actor or another reasonably believes them to be, the actor or another would be justified in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks protect; and
(2) The actor or another reasonably believes that his intervention is immediately necessary to protect the third person[.]

You are instructed with regards to the presumption set forth immediately above that:
(1) the facts giving rise to the presumption must be proven beyond a reasonable doubt;
(2) that even if such facts are proven beyond a reasonable doubt, you may find that the element sought to be presumed exists, but you are not bound to so find;
(3) that even though you may find the existence of such element, the State must prove beyond a reasonable doubt each of the other elements of the offense charged; and

–9–

(4) if you have a reasonable doubt as to the existence of a fact or facts giving rise to the presumption, the presumption fails, and you shall not consider the presumption for any purpose.

By the term "reasonable belief," as used herein, is meant a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant.

Now, if you find from the evidence beyond a reasonable doubt that on the 24th day of December, 2019 in Kaufman County, Texas, the defendant, Auston Bryce Armstrong, did then and there intentionally, knowingly, or recklessly cause serious bodily injury to Tyler Armstrong by stabbing said Tyler Armstrong in the upper body or arm with a deadly weapon, namely a knife or object unknown, and the defendant and Tyler Armstrong are members of the same family as described by Section 71.003 of the Texas Family Code, but you further find from the evidence, or you have a reasonable doubt thereof, that at that time the defendant was protecting himself from Tyler Armstrong's use or attempted use of unlawful force, and that the defendant reasonably believed, as viewed from his standpoint, that such force as he used was immediately necessary to protect himself against Tyler Armstrong's use or attempted use of unlawful force, and so believing, the defendant did then and there intentionally, knowingly, or recklessly cause serious bodily injury to Tyler Armstrong by stabbing said Tyler Armstrong in the upper body or arm with a deadly weapon, namely a knife or object unknown, then you will acquit the defendant and say by your verdict "not guilty."

The jury found appellant guilty of the charged offense. After hearing punishment evidence, the jury assessed punishment at twenty-five years' confinement. This appeal followed.

–10–

## II. Discussion

Appellant argues the jury charge was erroneous in its failure to instruct on the justifiable use of deadly force against Tyler under § 9.32(a)[2] and its failure to include an instruction on the presumption of reasonableness under § 9.32(b).[3] In a second issue, appellant argues the judgment should be modified to state the correct statute for the offense.

*Applicable law*

In each jury trial in a criminal case, the judge shall deliver to the jury, before argument begins, "a written charge distinctly setting forth the law applicable to the case[.]" TEX. CODE CRIM. PROC. art. 36.14. The purpose of the jury charge is to inform the jury of the applicable law and guide them in its application to the case. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). The court's instructions must apply the law to the facts adduced at trial. *Sanchez v. State*, 376 S.W.3d 767, 773 (Tex. Crim. App. 2012). But article 36.14 imposes no duty on trial courts to sua sponte instruct juries on unrequested defensive issues. *Posey v. State*,

---

[2] "A person is justified in using deadly force against another: (1) if the actor would be justified in using force against the other under Section 9.31; and (2) when and to the degree the actor reasonably believes the deadly force is immediately necessary: (A) to protect the actor against the other's use or attempted use of unlawful deadly force; or (B) to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery." TEX. PENAL CODE § 9.32(a).

[3] "The actor's belief under Subsection (a)(2) that the deadly force was immediately necessary as described by that subdivision is presumed to be reasonable if the actor: (1) knew or had reason to believe that the person against whom the deadly force was used: . . . (C) was committing or attempting to commit an offense described by Subsection (a)(2)(B); (2) did not provoke the person against whom the force was used; and (3) was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used." *Id*. § 9.32(b).

966 S.W.2d 57, 62 (Tex. Crim. App. 1998). The defendant must make a specific request to include particular defensive issues in the charge. *Id*. However, if the trial court does charge on a defensive issue, whether sua sponte or upon a party's request, but fails to do so correctly, this is charge error. *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013). Any such error in the charge is therefore subject to review under *Almanza*, discussed below, rather than precluded from review under *Posey*. *Mendez v. State*, 545 S.W.3d 548, 553 (Tex. Crim. App. 2018).

If the charge error was the subject of a timely objection in the trial court, reversal is required if there is some harm to the defendant from the error. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). On the other hand, if no proper objection was made, reversal is warranted only if the error causes egregious harm such that the defendant has not had a fair and impartial trial. *Id*. The degree of actual harm must be determined in light of the whole jury charge, the state of the evidence, "including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id*. "[J]ury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

The record before us shows that appellant did not request an instruction on the justifiable use of deadly force against Tyler or on the presumption of reasonableness of appellant's belief. Nor did he object to the omission of these instructions. As

–12–

described above, appellant's charge complaints were limited to, first, asking to remove what appeared to be an instruction on the presumption of reasonableness under § 9.31(a) from the draft charge and, second, correcting a typo. The trial court granted these two requests. Thus, in order to resolve appellant's complaint, we must determine as a threshold matter whether *Posey* applies, precluding review of appellant's complaints, or whether, in instructing the jury on self-defense, the trial court was further required to include the two instructions raised by appellant on appeal.

In *Hargrove v. State*, No. 05-11-00307-CR, 2012 WL 3553501, at *7 (Tex. App.—Dallas Aug. 20, 2012, pet. ref'd), the trial court charged the jury on the law of self-defense and "covered instructions on when a person is justified in using force or deadly force under penal code sections 9.31(a) and (b) and 9.32(a)(1)(2)(A), as well as an instruction on the duty to retreat under penal code section 9.32(c)." On appeal, the defendant complained about the trial court's failure to instruct the jury on the presumption of reasonable belief under penal code § 9.32(b), the theory of self-defense under § 9.32(a)(2)(B) that a person is justified in using deadly force against another to prevent the other's imminent commission of murder, and when the failure to retreat should not be considered by the jury. *Id.* This Court, observing the *Posey* rule that a trial court's failure to give unrequested defensive instructions is not error, concluded the defendant did not preserve his arguments for appellate review because the record "suggest[ed] nothing to indicate [the defendant] requested

–13–

an instruction under the complained-of subsections." *Id*.; *see also Davis v. State*, No. 05-10-00732-CR, 2011 WL 3528256, at *9–10 (Tex. App.—Dallas Aug. 12, 2011, pet. ref'd) (not designated for publication) (holding that, despite instructing the jury on self-defense, the trial court was not further required sua sponte to instruct the jury on the defendant's right to use deadly force to prevent the imminent commission of murder or that his belief that deadly force was immediately necessary should be presumed reasonable under § 9.32(b)).

In *Hall v. State*, No. 05-09-01368-CR, 2011 WL 1348635, at *5 (Tex. App.—Dallas Apr. 11, 2011, pet. ref'd) (mem. op.), the trial court charged the jury on self-defense under § 9.32(a)(1)(2)(A), but did not include an instruction in the charge regarding the justification for using deadly force against another to prevent the other's imminent commission of murder under § 9.32(a)(1)(2)(B). Counsel for the defendant did not request the latter instruction or object to the jury charge at the end of the charge conference. *Id*. This Court rejected the defendant's argument on appeal because the "trial court is not required to sua sponte submit a defensive theory, and a defendant must make a request before he is entitled to claim any error in omission from the charge." *Id*. (citing *Posey*, 966 S.W.2d at 62).

The above cases applying *Posey* demonstrate that trial courts, having included self-defense instructions in the charge, are not required sua sponte to include instructions on the presumption of reasonableness or deadly force. Such instructions are "defensive issues" that must be requested to be law applicable to the case under

–14–

article 36.14. *See, e.g., Davis*, 2011 WL 3528256, at \*9–10. Because appellant neither requested the inclusion of instructions on the justifiable use of deadly force against Tyler under § 9.32(a) and on the presumption of reasonableness under § 9.32(b), nor objected to their omission, appellant has failed to show the trial court erred. *See Posey*, 966 S.W.2d at 62. We overrule appellant's first issue.

*Judgment modification*

Appellant contends he was found guilty under § 22.02(b)(1) of the penal code, the first-degree felony of aggravated assault on a family member with a deadly weapon causing serious bodily injury—not § 22.02(a)(1), the second-degree felony of aggravated assault causing serious bodily injury, as stated in the judgment—and the judgment should be modified accordingly. The State agrees.

We are empowered by the rules of appellate procedure to "modify the trial court's judgment and affirm it as modified[.]" TEX. R. APP. P. 43.2. We can correct and reform the judgment of the trial court to make the record speak the truth when we have the record to do so. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd).

The indictment here alleged, in part, that appellant intentionally, knowingly, and recklessly caused serious bodily injury to the complainant, and appellant used a deadly weapon, and the complainant was a member of appellant's family. It identified this offense as a first-degree felony. The indictment listed the penal code offense as § 22.02(a)(1). The jury charge tracked the indictment and labeled the

–15–

offense as "Aggravated Assault Causing Serious Bodily Injury With a Deadly Weapon Against a Family Member." As noted above, the judgment listed the offense as § 22.02(a)(1) but the degree of offense as first-degree felony.

Because appellant was charged with and found guilty of aggravated assault on a family member with a deadly weapon causing serious bodily injury, *see* TEX. PENAL CODE § 22.02(b)(1), we agree with the parties. Accordingly, we modify the judgment to reflect the "Statute for Offense" as "Penal Code § 22.02(b)(1)."

### III. Conclusion

We overrule appellant's first issue. We sustain his second issue; the "Statute for Offense" portion of the judgment is modified to state "Penal Code § 22.02(b)(1)." As modified, we affirm the trial court's judgment.


/Ken Molberg/
KEN MOLBERG
JUSTICE

200912f.u05
DO NOT PUBLISH
Tex. R. App. P. 47



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

| | |
|---|---|
| AUSTON BRYCE ARMSTRONG, Appellant | On Appeal from the 86th Judicial District Court, Kaufman County, Texas |
| No. 05-20-00912-CR     V. | Trial Court Cause No. 20-00259-86-F. |
| THE STATE OF TEXAS, Appellee | Opinion delivered by Justice Molberg. Justices Reichek and Garcia participating. |

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The "Statute for Offense" portion of the judgment is **MODIFIED** to state "Penal Code § 22.02(b)(1)."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered January 18, 2023